EXHIBIT 1

Received From
SEATTLE

DEC 16 2009

08-CV-05745-CMP

FILED ___ ENTERED
LODGED ___ RECEIVED

DEC 15 2008    JS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

*(left margin, handwritten, rotated):* Sea 72574   Summons Iss.

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD and ANNE ERICKSON, individually
and the marital community composed thereof,

                              Plaintiffs,

v.

MICROAIRE SURGICAL INSTRUMENTS
LLC, a Virginia limited liability company
doing business in the State of Washington,

                              Defendant.

No. **C08 5745 FDB**

COMPLAINT FOR DAMAGES

**JURY TRIAL DEMANDED**

COME NOW Dr. Todd and Anne Erickson, Plaintiffs, and allege as follows:

## I.    INCORPORATION

1.    By this reference, each paragraph contained herein is incorporated as support for each paragraph which follows.

## II.    PLAINTIFFS

2.    Plaintiffs Dr. Todd and Anne Erickson, husband and wife, were, at all times relevant, residents of Pierce County, Washington.

3.    When not otherwise specified, the term "Plaintiffs" shall refer collectively to both Plaintiffs.

COMPLAINT FOR DAMAGES - 1

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • SEATTLE WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11 274517 V1

### III.   DEFENDANT MICROAIRE

4.      Defendant MicroAire Surgical Instruments LLC ("Defendant MicroAire") is a Virginia limited liability company doing business in the State of Washington.  At all relevant times, Defendant MicroAire manufactured certain products, including pneumatic surgical drills, for eventual sale in the State of Washington.  At all times relevant, Defendant MicroAire was a product manufacturer as that term is defined in RCW 7.72.010.

### IV.   JURISDICTION AND VENUE

5.      Jurisdiction and venue are proper pursuant to 28 U.S.C. §1332.  There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

### V.   STATEMENT OF FACTS

6.      Dr. Todd Erickson is a 47 year-old fully certified Oral and Maxillofacial surgeon ("oral surgeon").  Dr. Erickson graduated from Creighton University Dental School in 1989.  Dr. Erickson completed a general practice residency at University Nebraska Medical Center in 1990, followed by an externship at the University of Washington in the summer of 1990.

7.      After spending one year practicing in General Dentistry, Dr. Erickson enrolled in a surgical residency affiliated with Wayne State University, at Detroit-Macomb Hospital.  After completing his surgical residency, Dr. Erickson's professional emphasis was oral and maxillofacial surgery.

8.      Oral surgery involves extensive surgical removal of bone and sectioning of teeth, which requires the use of high powered surgical drills adapted specifically for that use.  These drills are characterized by their high torque and high speed capabilities.

9.      The surgical drills used in oral surgery also produce high levels of noise.

10.     In 1997, Dr. Erickson and his wife Anne established Sound Oral and Maxillofacial Surgery, P.S. ("Sound Oral").

COMPLAINT FOR DAMAGES - 2



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101 ·
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

003035-11 274517 V1

11.     After opening Sound Oral, Dr. Erickson worked full time as a solo practitioner of oral surgery.  Anne was the business manager for Sound Oral.  In addition to managing the business affairs of Sound Oral, Anne is also a registered nurse.

12.     Because oral surgery is invasive, painful and elicits anxiety, it is necessary for most patients to be heavily sedated or under general anesthesia during the procedure.  Oral surgeons administering anesthesia must be fully able to monitor and assess the patient's vital signs, being prepared to detect and respond to the slightest changes in respiratory, cardiac function or other potential emergencies associated with the administration of anesthesia.

13.     Monitoring patients on anesthesia requires careful auscultation of a patient's cardiac and respiratory sounds.

14.     Dr. Erickson is a board certified Diplomat of the American Board of Dental Anesthesia and was fully certified to administer general anesthesia.

15.     In order to monitor the anesthesia provided to his patients during surgery, Dr. Erickson routinely used a pre-cordial stethoscope secured to the patient's chest near the sternal notch.

16.     Dr. Erickson monitored each patient's breath sounds, airway patency and heartbeat through an ear piece attached to the pre-cordial stethoscope.

17.     It is critical for oral surgeons such as Dr. Erickson to hear and communicate with the staff assisting with these oral surgeries.  Should an emergency arise, Dr. Erickson must be able to communicate with his staff in order to initiate immediate and appropriate action.

18.     During oral surgery, the noise levels are typically high.  The primary source of the elevated noise levels is the pneumatic surgical drill.

19.     During the last twenty years, several studies have shown that high speed drills utilized in the practice of dentistry have been associated with noise-induced hearing loss.  The noise levels of the drills measured in these studies ranged from approximately 60.8 to 79 decibels measured over an eight hour time-weighted average.

COMPLAINT FOR DAMAGES - 3



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11 274517 V1

20. Comprehensive scientific studies dating back to 1991 have found that, "Air-driven dental hand pieces have been implicated as a cause of high-frequency hearing loss in dentists."

21. These studies have also found that right-handed dentists have been shown to have greater hearing loss in their left ear. This fact was found to be attributable to the close proximity of these dentists' left ear to the noise source, the high speed pneumatic drills.

22. Since 1997, the pneumatic surgical drills utilized by Dr. Erickson in his practice were manufactured by Defendant MicroAire.

23. Since 1997, Plaintiffs purchased Defendant MicroAire's pneumatic surgical drills from Defendant MicroAire and Defendant MicroAire's local sales representative, Dixon Orthopedics, Inc.

24. At all times relevant, Defendant MicroAire knew, or should have known, that its pneumatic surgical drills sold to Plaintiffs generate noise levels in excess of levels known to cause noise-induced hearing loss.

25. Defendant MicroAire knew, or should have known, that its pneumatic surgical drills generated noise level exposure of approximately 88 to 90 decibels over an eight hour time-weighted average, when used for their intended purpose.

26. Each pneumatic surgical drill sold to Plaintiffs by Defendant MicroAire included an instruction manual. The manual(s) provided instruction for set-up, operation, cleaning, decontamination and maintenance of the drill(s).

27. No warnings regarding potential noise-induced hearing loss or the need to wear hearing protection were provided in the instruction manuals or any other literature provided for any of the pneumatic surgical drills sold to Plaintiffs by Defendant MicroAire.

28. Since at least 1997, Defendant MicroAire failed to warn Plaintiffs that the use of its pneumatic surgical drills could cause long-term, permanent noise-induced hearing loss when used for their intended purpose.

COMPLAINT FOR DAMAGES - 4



HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11 274517 V1

29.   At all times relevant, Defendant MicroAire knew, or should have known, the manner in which its pneumatic surgical drills were being utilized by oral surgeons such as Dr. Erickson.

30.   On information and belief, at all times relevant, Defendant MicroAire knew that there existed feasible alternatives that generated far less noise than its pneumatic surgical drills.

31.   On information and belief, Defendant MicroAire was, at all times relevant, aware of the existence of feasible engineering controls, including but not limited to, sound muffling devices that could be incorporated into its pneumatic surgical drills.

32.   On information and belief, Defendant MicroAire was aware that its electric surgical drills were quieter and therefore safer than pneumatic surgical drills but did not disclose that information to the public.

33.   Defendant MicroAire failed to disclose to the consuming public that there existed quieter alternatives to its pneumatic surgical drills.

34.   Defendant MicroAire failed to disclose to the consuming public that there existed feasible alternatives to its pneumatic surgical drills from a hearing loss perspective.

35.   Since establishing Sound Oral in 1997, Dr. Erickson routinely utilized Defendant MicroAire's pneumatic surgical drills in the oral surgeries performed on his patients.  Dr. Erickson was routinely exposed to high levels of noise generated by Defendant MicroAire's pneumatic surgical drills.

36.   Plaintiffs were unaware that the high noise levels generated by Defendant MicroAire's pneumatic surgical drills could cause long-term, permanent hearing damage.

37.   Plaintiffs were unaware of feasible alternatives to Defendant MicroAire's pneumatic surgical drills suitable for use in oral surgery.

38.   In early 2006, Dr. Erickson began noting ringing in his ears.

39.   During the first quarter of 2006, Dr. Erickson became concerned that the ringing in his ears should be evaluated by a medical professional.

COMPLAINT FOR DAMAGES - 5



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11 274517 V1

40.     As a result of this problem, in 2006 Dr. Erickson consulted with several healthcare providers including specialists in neurology, otolaryngology and audiology.

41.     In 2006, Dr. Erickson was diagnosed with noise induced hearing loss for the first time. Dr. Erickson was also diagnosed with tinnitus which causes constant ringing in his ears.

42.     Dr. Erickson's tinnitus and hearing loss was caused by his long-term use of Defendant MicroAire's pneumatic surgical drills during oral surgery.

43.     Prior to using Defendant MicroAire's pneumatic drills in his oral surgery practice, Dr. Erickson had no prior history of traumatic ear injury and/or tinnitus. Likewise, there is no history of tinnitus or early hearing loss in Dr. Erickson's family.

44.     Dr. Erickson's hearing loss has a significant impact on his practice. Dr. Erickson's hearing loss interferes with his ability to communicate with his staff and monitor patients, especially those who were sedated or under general anesthesia.

45.     As a result of his hearing loss and tinnitus, Dr. Erickson was forced to stop practicing as an oral surgeon and close his practice.

46.     Prior to closing his practice, Dr. Erickson consulted with other professionals to analyze potential modifications that would allow him to continue practicing as an oral surgeon. No effective engineering or administrative controls were identified that would allow Dr. Erickson to continue practicing with his permanent hearing damage.

47.     The use of hearing protection was analyzed as well. Hearing protection was deemed unfeasible because it would prevent Dr. Erickson from monitoring patients under anesthesia and/or adequately communicating with his staff during surgery.

48.     Dr. Erickson's hearing loss has also had a detrimental impact on his family relationships. Dr. Erickson's relationship with his wife Anne and his son, Luke, have been negatively impacted by his permanent hearing loss and tinnitus.

COMPLAINT FOR DAMAGES - 6



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11 274517 V1

1

## VI.   CLAIMS AGAINST DEFENDANT MICROAIRE
### UNDER THE WASHINTON PRODUCT LIABILITY ACT

2

**A.    UNSAFE DESIGN**

3

4      49.    Defendant MicroAire is a product manufacturer within the meaning of RCW

5    7.72.010.

6      50.    At all times relevant, Defendant MicroAire manufactured the pneumatic surgical

7    drills utilized by oral surgeons, including Dr. Erickson.

8      51.    The pneumatic surgical drills manufactured by Defendant MicroAire were not

9    reasonably safe because they were unsafe as designed.  Defendant MicroAire's pneumatic

10   surgical drills could not reasonably be used by oral surgeons without an unsafe exposure to high

11   noise levels.

12     52.    Plaintiffs' injuries were proximately caused by the unreasonably unsafe surgical

13   drills manufactured by Defendant MicroAire.

14     53.    As a result, Defendant MicroAire is liable under RCW 7.72.030(1)(a).

15   **B.    FAILURE TO WARN**

16     54.    Defendant MicroAire is a product manufacturer within the meaning of RCW

17   7.72.010.

18     55.    At all times relevant, Defendant MicroAire manufactured the pneumatic surgical

19   drills utilized by oral surgeons, including Dr. Erickson.

20     56.    The pneumatic surgical drills manufactured by Defendant MicroAire were not

21   reasonably safe because they lacked adequate safety warnings or instructions regarding the

22   potential for long-term hearing loss.

23     57.    Plaintiffs' injuries were proximately caused by the unreasonably unsafe surgical

24   drills manufactured by Defendant MicroAire.

25     58.    As a result, Defendant MicroAire is liable under RCW 7.72.030(1)(b)&(c).

26

COMPLAINT FOR DAMAGES - 7



**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

003035-11  274517 V1

1

## VII.   PRAYER FOR RELIEF

2       Wherefore, Plaintiffs request that the Court enter judgment against defendant in the

3   following fashion:

4       A.      The full amount of Plaintiffs' special damages;

5       B.      The full amount of Plaintiffs' general damages;

6       C.      The full amount of Plaintiffs' damages for loss of consortium;

7       D.      Plaintiffs' attorneys' fees and costs;

8       E.      Prejudgment interest on Plaintiffs' damages; and

9       F.      Such other and further relief the Court deems just and proper.

10                              **JURY DEMAND**

11   Plaintiffs demand a trial by jury.

12

13   DATED this 15th day of December, 2008.

14                          HAGENS BERMAN SOBOL SHAPIRO, LLP

15                          By

16                              Anthony D. Shapiro, WSBA No. 12824
                                David P. Moody, WSBA No. 22853

17                              Martin D. McLean, WSBA No. 33269
                            1301 Fifth Avenue, Ste. 2900

18                          Seattle, WA  98101
                            Tel:  (206) 623-7292

19                          Fax:  (206) 623-0594
                            tony@hbsslaw.com

20                          davidm@hbsslaw.com
                            martym@hbsslaw.com

21                          Attorneys for Plaintiffs

22

23

24

25

26

COMPLAINT FOR DAMAGES - 8



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

003035-11  274517 V1

EXHIBIT 2

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              WESTERN DISTRICT OF WASHINGTON
 3                      AT TACOMA
 4    ***************************************************
 5   TODD and ANNE ERICKSON,
     individually and the marital
 6   community composed thereof,
 7              Plaintiffs,
 8      -vs-                              Case No.
                                         C08-5745 FDB
 9

     MICROAIRE SURGICAL INSTRUMENTS,
10   LLC, a Virginia limited liability
     company doing business in the
11   State of Washington,
12              Defendant.
13   ***************************************************
14
                DEPOSITION OF JOHN PASCALOFF
15
                  9:59 a.m. to 2:11 p.m.
16
                   December 7, 2009
17
                 Ruckersville, Virginia
18
19
20
21
22
23
24
25        REPORTED BY:  Kimberly A. Adderley, RMR
```

Page 8

1        Q.      Would you trace for me your tenure at

2     MicroAire Surgical Instruments, LLC from 1995 to

3     the present?

4        A.      I came in as a project manager working

5     on power instruments.

6        Q.      What are power instruments?

7        A.      They are either pneumatically or

8     electrically driven surgical tools.

9        Q.      Okay.  And how long were you in that

10    position?

11       A.      Up until approximately 2001, I believe

12    it was.

13       Q.      So --

14       A.      At which point --

15       Q.      Go ahead.

16       A.      -- I was given the director of

17    engineering title, basically doing the same job.

18       Q.      So, you have been -- your title has

19    been director of engineering from 2001 to the

20    present?

21       A.      That's correct.

22       Q.      Okay.  And when you say basically doing

23    the same job, generally describe for me your

24    general duties as director of engineering.

25       A.      My responsibilities include developing

Erickson v. MicroAire Surgical Instruments
Deposition of: John Pascaloff

December 7, 2009

Page 16

1        Q.    For those of us who are not familiar
2   with your field, can you explain what happened
3   there?
4        A.    There wasn't a positive lock on the
5   neuro burr, which caused the burr to move into the
6   foot, which had an auxiliary guard.  But, it was
7   noticed and was listed as a complaint by the
8   surgeon, and ultimately went to court.  I
9   shouldn't say to court, went to discovery or
10  whatever you call this phase of it.
11       Q.    Discovery.  And was there some claim
12  that someone was injured as a result of that?
13       A.    Not to my knowledge.
14       Q.    All right.  Those are the only two
15  times that you have testified --
16       A.    Yes, sir.
17       Q.    -- prior to today?
18       A.    That is correct.
19       Q.    Have you ever testified at trial?
20       A.    No, I have not.
21       Q.    All right.  Now, you understand today
22  you are testifying as a 30(b)(6) witness?
23       A.    Yes, sir.
24       Q.    And you understand that means that your
25  testimony is here on behalf of your company?

Page 17

1       A.    Yes, sir.

2       Q.    All right.  So, your testimony will

3    bind the company.  You understand that?

4       A.    I do.

5       Q.    All right.  Now, you mentioned you

6    worked at Hall Surgical prior to 1995.

7       A.    Yes, sir.

8       Q.    Can you tell me your tenure at Hall.

9    How long was it?

10      A.    Nineteen years.

11      Q.    So, from 1976 to 1995?

12      A.    Correct.

13      Q.    Was that out in California?

14      A.    Yes.

15      Q.    You were in California the whole time?

16      A.    Yes.

17      Q.    All right.  And what did you do at

18   Hall?

19      A.    Started as an assembly trainee, worked

20   my way up through manufacturing engineering, and

21   then to product development.

22      Q.    At some point in time during your

23   tenure at Hall, was one of your job duties and

24   responsibilities to review engineering drawings?

25      A.    Yes.

Page 18

1        Q.    And if you can give us a timeframe

2   during the 1976 to '95 timeframe when one of your

3   tasks was to review engineering drawings.

4        A.    I would have to tell you it's going to

5   be around '82 or '83, when I went to work for

6   manufacturing engineering.

7        Q.    Okay.  So, you started work at

8   manufacturing engineering in Hall in 1982 or 1983;

9   is that correct?

10       A.    In that timeframe, yes.

11       Q.    Fair enough.  And it was when you made

12   that switch that you would have begun to review

13   engineering drawings like the review you do here

14   at MicroAire?

15       A.    Yes.

16       Q.    All right.  Now, is Hall a competitor

17   of MicroAire?

18       A.    Yes.

19       Q.    And when I say a competitor, I mean in

20   terms of the type of drill -- let me back up.

21            The drill we are talking about today is

22   the 2910-100.  You are familiar with that?

23       A.    Yes, sir.

24       Q.    Okay.  And tell me, once again, how you

25   would describe that type of drill.

Page 19

1        A.     It's a pneumatically-driven high-speed

2    drill using a pneumatic motor with a speed

3    increaser, and then it has a collet mechanism at

4    the nose end to accept different cutting burrs.

5        Q.     Okay.  And with respect to that

6    product, is Hall a competitor of MicroAire?

7        A.     Yes.

8        Q.     And what Hall products would be the

9    comparable product to the MicroAire 2910-100?

10             MR. YOSHIDA:  Object to time.

11   BY MR. SHAPIRO:

12       Q.     During your tenure there.

13       A.     It would have been the Hall II and the

14   Surgairtome Two.

15       Q.     Surgairtome Two?

16       A.     Yes.

17       Q.     Can you spell that for the court

18   reporter?

19       A.     S-U-G-A-R-T-O-M-E.  There's a T, it's

20   T-A-I-R, I'm sorry.

21       Q.     And then new word two?

22       A.     Two, spelled out T-W-O.

23       Q.     All right.  And in the first drill that

24   you mentioned?

25       A.     Hall II, H-A-L-L, and then two with two

Erickson v. MicroAire Surgical Instruments
Deposition of: John Pascaloff

December 7, 2009

1      A.     Yes, I have.

2      Q.     Okay.  Now, this is what is called a

3  30(b)(6) deposition notice, and it lays out the

4  topics that we are going to talk about today.  You

5  have had an opportunity with your counsel to

6  review it prior to today.

7      A.     Yes.

8      Q.     All right.  Now, what I want you to do,

9  just so we are clear, is tell me which topics --

10  the topics start on page two of the notice -- that

11  you are not prepared to testify about today.

12      A.     There are no topics that I'm not

13  prepared to talk about today.

14           I'm sorry, you said the next page, I

15  didn't look further.

16      Q.     Please look at all the topics.  I'm

17  sorry.

18      A.     Okay.

19      Q.     Do you want to take a moment?

20      A.     Yeah.  Just a brief moment.

21      Q.     I mean, I don't want you testifying

22  about any topics that...

23      A.     I just want to make sure.

24           Yes.  Topic number 11.

25      Q.     So, you won't be testifying here today

Page 22

1    on topic number 11, which is MicroAire's Corporate

2    Structure?

3         A.    Correct.

4         Q.    Are you prepared to testify here today

5    about number 1, the factual basis for defendant's

6    affirmative defenses numbers 1 through 24?

7              I was informed that you weren't, but if

8    you are, that's fine.

9              MR. YOSHIDA:   I think he has as little

10             knowledge as anyone in the company about some

11             of those.   So, you can ask him.

12             THE WITNESS:   I will tell you what I

13             know.

14             MR. YOSHIDA:   Which is what the company

15             knows.

16             MR. SHAPIRO:   Well, that's why he's

17             here.

18             THE WITNESS:   Yeah.

19             MR. SHAPIRO:   Okay.

20   BY MR. SHAPIRO:

21        Q.    All right.   So, other than topic number

22   11, you are prepared to testify about all other

23   topics in Exhibit 1, the 30(b)(6) deposition

24   notice?

25        A.    Yes.

Page 31

1        A.      Powered surgical tool.

2        Q.      So, from '96 or '97, you would have

3    been the person who would sign off on any fault

4    tree analysis from an engineering standpoint for

5    power instruments and surgical tools?

6        A.      Yes.  I was the primary signatory.

7        Q.      Okay.  And would fault tree analyses be

8    updated as you made revisions to a product?

9        A.      Yes.

10       Q.      Okay.

11       A.      But --

12       Q.      Are they supposed to be updated?

13       A.      If you are changing form, fit, or

14   function.  Fault trees are also updated in the

15   case of complaints, if we have come across

16   something that we weren't able to identify early

17   on.

18       Q.      Okay.  Fair enough.

19               So, is it fair that you, from an

20   engineering standpoint, have been involved since

21   '96 or '97 with updating the fault tree analysis

22   for any fault tree that applies to the 2910-100

23   instrument?

24       A.      I was involved, yes.

25       Q.      Okay.  During any of that time from

Page 32

1    '96, '97 forward, did you analyze the risk of

2    excessive noise?

3         A.    No, we did not.

4         Q.    Okay.  Have you inquired of anyone whom

5    preceded you at the company, that from the point

6    in time the company put out the product to when

7    you became involved in '96 or '97, whether the

8    company ever analyzed that product in the fault

9    tree analysis for risk of excessive noise?

10        A.    To the best of our knowledge, no.

11        Q.    To the best of your knowledge, no one

12   at the company did?

13        A.    No one at the company did.

14        Q.    Okay.  So, let me see if I can

15   summarize this.  It's your understanding from the

16   point in time when the product was put out to the

17   public -- first when it was designed and then put

18   out to the public, to the present, the company has

19   never looked at the 2910-100 and analyzed the risk

20   of excessive noise?

21        A.    That is correct.

22        Q.    Okay.  I'm going to ask you a similar

23   question.  Is it also true that from the point in

24   time when the product was designed, and

25   specifically the product being the 2910-100 drill,

Erickson v. MicroAire Surgical Instruments
Deposition of: John Pascaloff

December 7, 2009

Page 33

1    that no one at the company, from when it was put

2    out to the present, has analyzed the risk of the

3    drill creating noise-induced hearing loss?

4        A.    To the best of my knowledge, that is

5    correct.  It has not been analyzed for that.

6        Q.    All right.  Okay.  And I take it from

7    your answer, then, that to the best of your

8    knowledge, the company has never tested that

9    product for excessive noise; is that fair?

10       A.    We have -- no, we have not tested it

11   for excessive noise.

12       Q.    Okay.  And just so you and I are

13   communicating, what do you understand the term

14   excessive noise to mean when you used it in your

15   answer?

16       A.    For the instrument exceeding OSHA

17   standards.

18       Q.    Okay.  And OSHA standards being what?

19       A.    That I can't answer off the top of my

20   head, but we could provide that.

21       Q.    Okay.  So, just so I'm clear, from the

22   time the product was designed and marketed to the

23   public in the '80s, up through the time you

24   started with the company, and up to the present,

25   it's your understanding that the company has never

1    know if any of those gentlemen reside in the area?

2         A.    I do not have knowledge of that.

3         Q.    Okay.  But you saw Mr. Skolnick?

4         A.    Yes.  And he was moving to what they

5    call the outer shore here in Virginia.

6         Q.    Okay.  And where is that?

7         A.    Somewhere out there by Chincoteague.

8         Q.    Okay.

9         A.    Exactly where he is at, I have no clue.

10        Q.    Assateague and Chincoteague, that area?

11        A.    Yeah.

12             MR. YOSHIDA:   I guess you guys know

13        more how to spell that.

14             MR. SHAPIRO:   Growing up here, I do,

15        yes.

16    BY MR. SHAPIRO:

17        Q.    You said one of the problems with the

18    2910-100 was a cleaning problem?

19        A.    Yes.

20        Q.    Explain that to me.

21        A.    The cleaning procedure is well

22    specified in the instructions for use.  One of the

23    primary things that make it -- to get the

24    instrument, the nose clean is to remove the burr

25    guard, which unscrews.  It is spelled out.  The

Page 61

1       1996?

2                   MR. YOSHIDA:   Object to the form.

3                   THE WITNESS:   Customer complaints of

4           minor magnitude that did not fall under FDA

5           guidelines for a complaint, to the best of my

6           knowledge, there was no formal system to

7           track that.

8   BY MR. SHAPIRO:

9           Q.    Okay.   And what is your understanding

10      of the FDA guidelines for customer complaints that

11      you referred to?

12          A.    If the complaint is going to result in

13      a patient injury or a potential hazard to the

14      operator.

15          Q.    Okay.   So --

16

17                  (Outside interruption)

18

19  BY MR. SHAPIRO:

20          Q.    So, let me pose to you the same

21      question then, now that I understand what the FDA

22      standard is.   If somebody called in and said my

23      drill seems too loud, would that be within those

24      FDA guidelines or would that be what you would

25      characterize as a minor complaint?

1            MR. YOSHIDA:  Object to the form,

2        incomplete hypothetical.

3   BY MR. SHAPIRO:

4        Q.    Go ahead and answer.

5        A.    Again, there's no way to quantify it.

6   So, no, it would not be a formal complaint.

7        Q.    Okay.  So, and that, therefore,

8   wouldn't be logged anywhere?

9        A.    No, it would not.

10       Q.    Okay.  And that was pre-1996, as well

11  as post-1996?

12       A.    That's correct.

13       Q.    Okay.  So, just so we are clear, if

14  somebody called in and said my drill is too loud,

15  there would be no way of going back into your

16  documents at the company to track when and if that

17  occurred; is that correct?

18            MR. YOSHIDA:  Object to the form.

19            THE WITNESS:  To the best of my

20        knowledge, that is correct.

21  BY MR. SHAPIRO:

22       Q.    All right.  Now, when complaints are

23  formally tracked, what is the document that tracks

24  complaints?

25       A.    I would have to get that information to

1   BY MR. SHAPIRO:

2        Q.    Well, do you understand my question?

3        A.    Yes.

4        Q.    Please answer.

5              MR. YOSHIDA:   Same objection.

6              THE WITNESS:   Well, again, that's why

7        we do the field study, so that we don't get

8        anybody that says, yeah, we think it's going

9        to be a problem.

10             Then you compare these devices to

11       devices that are currently on the market and

12       they use every day, and it's got to be equal

13       to or better than competitive devices on the

14       market.

15  BY MR. SHAPIRO:

16       Q.    Have you ever done any field studies

17  resulting from fault tree analyses where the

18  company has issued any warnings?

19       A.    Yes.

20       Q.    Tell me about those.

21       A.    Excessive nose heat in the drills when

22  cleaning wasn't done properly.

23       Q.    Okay.  So, let me see if I understand

24  that.  The cleaning issue was identified as a

25  potential hazard in a fault tree analysis;

1    correct?

2          A.    Yes.

3          Q.    You communicated with users, oral

4    maxillofacial surgeons; correct?

5          A.    Yes.

6          Q.    And you said let us know if you are

7    having any problems after you clean the device;

8    correct?

9          A.    There is a warning in the instruction

10   manual to monitor the nose heat.

11         Q.    Okay.  I understand.

12               I'm trying to get to the point where

13   before that time, when you identified that as an

14   issue and were communicating with the public so

15   that they could give you feedback.  Are we --

16         A.    Yes.

17         Q.    You understand my point?

18         A.    Uh-huh.  Yes.

19         Q.    And you received feedback from the

20   public on that.  And as a result of the feedback

21   from the oral and maxillofacial surgery community,

22   you then put a warning into your materials,

23   written materials; correct?

24         A.    That's correct.

25         Q.    Okay.  And how long of a field study

Page 83

1        A.    That is correct.

2        Q.    All right.  Whether or not you

3    tested -- and when I say you, I'm now limiting it

4    to the '96 timeframe until when this lawsuit was

5    filed, whether or not you tested for excessive

6    noise or the risk of noise-induced hearing loss,

7    did you ever test the 2910-100 for decibel level?

8        A.    No, we did not.

9        Q.    Okay.  Based on your investigation,

10   it's also true that your predecessors, when it put

11   the product out to market, up until the time that

12   you came to the company, didn't test the product

13   for decibel level; correct?

14       A.    To the best of my knowledge, that is

15   correct.

16            MR. SHAPIRO:  Let's mark this as

17       number 3.

18

19            (Deposition Exhibit 3 marked for

20       identification)

21

22   BY MR. SHAPIRO:

23       Q.    Take a look at Exhibit 3.  Flip through

24   it, if you would, and let me know when you have

25   had an opportunity to do that.

1    BY MR. SHAPIRO:

2         Q.    Take a look at Exhibit 4, sir, and let

3    me know when you have had a chance to familiarize

4    yourself with it.

5         A.    You can proceed.

6         Q.    Okay.  Exhibit 4, just for the record,

7    has a face page entitled request for production

8    number 20, and then a group of documents behind

9    that face page that bear the production number

10   MA 00750 through 762.

11              Mr. Pascaloff, can you tell me what

12   Exhibit 4 is?

13        A.    These are the top-level assembly

14   drawings, or the history of the top-level assembly

15   drawings for the 2910-100 instrument.

16        Q.    And when you use the term top-level

17   drawings, can you describe what that is?

18        A.    It shows the assembly of all of the

19   component parts.

20        Q.    Okay.  So, what Exhibit 4 is, is it

21   shows the instrument after all of the components

22   are assembled as they are supposed to be

23   assembled?

24        A.    That is correct.

25        Q.    And when you say it's a history, it

Page 92

1    includes drawings that have been superseded or

2    drawings that are obsolete; correct?

3         A.    That is correct.

4         Q.    All right.  Looking at Exhibit 4, does

5    this appear to be a complete top-level drawing

6    history for the 2910-100?

7         A.    It appears to be, yes.

8         Q.    All right.  Now, and just so I'm clear,

9    these drawings, these top-level drawings that

10   comprise Exhibit 4, these are drawings that come

11   from the files of your company, MicroAire Surgical

12   Instruments?

13        A.    They are.

14        Q.    And they were prepared by people with

15   knowledge of the instrument, as well as the

16   component parts?

17        A.    That is correct.

18        Q.    And they were created in the normal and

19   ordinary course of business?

20        A.    That is correct.

21        Q.    And they are formal company documents;

22   correct?

23        A.    That is correct.

24        Q.    All right.  The listing, there are some

25   parts listed.  If you go back into -- or,

1    actually, most of the pages, on the right-hand

2    side, there are some numbers and there's a chart.

3    What do those numbers and descriptions pertain to?

4         A.    That is the bill of materials referred

5    to by the drawing by the part number.

6         Q.    Bill of materials.  In other words, it

7    lists the part numbers that are depicted here that

8    actually go into and create the finished product?

9         A.    That is correct.

10        Q.    All right.  Now, in Exhibit 4, looking

11   at these drawings, and if you want to look at any

12   of them, take your time and do so, is there any

13   indication in any of the parts that are listed on

14   any of these pages of any sort of noise muffling

15   system or noise muffling part?

16        A.    No, there is not.

17        Q.    Now, can you tell me which one of these

18   drawings reflects the last, kind of, state of the

19   2910-100?

20              And you can refer to the production

21   numbers at the bottom right-hand corner.

22              Looking for your glasses?

23        A.    Yeah.  Getting old.

24        Q.    Take your time.

25        A.    What can I say.

Erickson v. MicroAire Surgical Instruments
Deposition of: John Pascaloff

December 7, 2009

Page 95

1        A.    Yes.

2        Q.    And I think you referred to it as the

3   most recent or last revision?

4        A.    Yes, sir.

5        Q.    How often are these top-level documents

6   revised?

7        A.    Only as changes are made to the

8   procedure or any of the component parts.

9        Q.    Okay.  Looking at this list, or this

10   compilation of top-level drawings, generally,

11   without going into exhaustive detail, what are the

12   types of changes that you can see that have

13   occasioned revisions to the top-level drawing?

14        A.    Mainly, you know, depending on how the

15   subassemblies are put together, we will regroup

16   the parts for ease of assembly.

17        Q.    Now, is there anything in this last

18   top-level drawing or last revision, which is set

19   out at production number MA 00761, that is

20   designed to reduce or lessen the noise level of

21   the 2910-100?

22        A.    There is nothing in this drawing to

23   reduce noise --

24        Q.    Okay.

25        A.    -- from its original design.

1    instrument is put together, that may or may not be

2    approved, depending on, you know, if that change

3    is going to damage any of the component parts in

4    the assembly.

5        Q.    Okay.  At any time during your tenure

6    at MicroAire Surgical Instruments from '96 up

7    until this lawsuit was filed, was there any

8    suggestion or discussion that you are aware of

9    from anyone where someone suggested the

10   desirability of testing any of these small power

11   drills for noise?

12       A.    To the best of my knowledge, no.

13       Q.    Okay.  It's something that you never

14   suggested; correct?

15       A.    No.

16       Q.    I'm correct?

17       A.    You are correct.

18       Q.    Okay.  Now, you mentioned -- I think I

19   asked you earlier in looking at Exhibit 4, whether

20   there were any parts in Exhibit 4 that are

21   depicted that were designed to lessen or reduce

22   noise, and you told me no; correct?

23       A.    That is correct.

24       Q.    There's nothing in the original design

25   of the 2910-100 that was designed and placed in

Page 114

1    Let me know when you have had a chance to

2    familiarize yourself with it.

3         A.    Okay.  Go ahead.

4         Q.    Before we get to Exhibit 6, Exhibit 5

5    that we just looked at, the component drawing

6    file.

7         A.    Yes, sir.

8         Q.    All right.  That group of documents

9    come from the files of MicroAire Surgical

10   Instruments; correct?

11        A.    They did.

12        Q.    And they are true and accurate copies

13   of documents in the files of the company?

14        A.    To the best of my knowledge, yes.

15        Q.    And they were prepared and appear to be

16   put together in the normal and ordinary course of

17   the company's business?

18        A.    That is correct.

19        Q.    And they were drawn and signed off on

20   by people with knowledge of the information

21   contained in those component drawings?

22        A.    Yes, they were.

23        Q.    All right.  Exhibit 6, which is

24   entitled "Instruction Manual for the Pneumatic

25   Power Instrument System."  Do you see that?

1      A.     Yes.

2      Q.     What is this document?

3      A.     This document is the instructions for

4   use for the 2910 and other small power devices.

5   Primarily 2910.

6      Q.     Okay.  So, this Exhibit 6, just so we

7   are clear, is the instruction manual for the

8   2910-100 drill?

9      A.     It is the instruction manual that is

10  included with that drill, yes.

11     Q.     Okay.  You anticipated my next

12  question.  This instruction manual would be sent

13  to someone who ordered the 2910-100 drill?

14     A.     That is correct.

15     Q.     Now, this instruction manual, explain

16  to me the process by which instruction manuals at

17  MicroAire Surgical Instruments are compiled and

18  put together.

19     A.     The process begins with engineering and

20  marketing sitting down and looking at predicate

21  devices that are on the market.  We look at the

22  potential hazards and risks, we look at the

23  potential issues for cleaning, sterilization.  We

24  want to spell out proper use and handling of the

25  instruments.  That is put together by engineering

Page 117

```
 1    covered in the instruction manual.  We look at
 2    competitive equipment to see what other warnings
 3    or labels they have put in and see if they are
 4    applicable to our device.
 5          Q.    Okay.  Let me ask you about that.  From
 6    a competitive standpoint, do you periodically
 7    order a competitor's device to see what they are
 8    doing in that particular marketing space?
 9          A.    We do.
10          Q.    Okay.  And do you take the device apart
11    to see how they have manufactured it or put it
12    together?
13          A.    We do.
14          Q.    Okay.  So, you would be able to
15    determine what component parts your manufacturers
16    are putting in, say, for example, the competitive
17    drill to the 2910-100?
18          A.    We could, yes.
19          Q.    Did you do that when you were at
20    MicroAire; for example, did you order any of the
21    Hall, I think you said Surgair?
22          A.    Surgairtome.
23          Q.    Surgairtome Two drills to determine
24    what they were doing with those drills and what
25    parts they were putting in?
```

Page 118

1    A.    No, I did not.

2    Q.    Why didn't you do that?

3    A.    Because I worked with Hugh Yoemans to

4    design the Surgairtome Two.  I knew what was in

5    it.

6    Q.    Okay.  How about Stryker, did you order

7    any of their drills in the same space as the

8    2910-100 to determine what they were putting in

9    their drills and what they were putting in their

10   instruction manual?

11   A.    No, we did not.

12   Q.    Why not?

13   A.    We didn't feel there was any reason to.

14   Q.    Okay.  Well, I guess that then asks my

15   next question, when do you feel there's a need to

16   go out and purchase a competitor's competitive

17   product so that you can analyze it?

18   A.    If we feel there's a significant

19   improvement or change in performance, we will

20   review it then.

21   Q.    Okay.  So, do you feel like MicroAire

22   decided not to look at the Hall product

23   specifically because you were somebody who knew

24   about the parts of the Hall product and knew of

25   its characteristics?

```
 1        A.     That's correct.
 2        Q.     Now, if you want to look through it,
 3   you can, but I suspect I know your answer.   Is
 4   there anything in this instruction manual that
 5   warns the operator about the risk of excessive
 6   noise?
 7        A.     To the best of my knowledge, there is
 8   not.
 9        Q.     Okay.  Is there any warning in this
10   instruction manual, Exhibit 6, that warns the
11   operator about the risk of noise-induced hearing
12   loss?
13        A.     To the best of my knowledge, there is
14   not.
15        Q.     Is there any warning in this
16   instruction manual about the need to wear any sort
17   of hearing protection?
18        A.     To the best of my knowledge, there is
19   not.
20        Q.     And with respect to those three last
21   questions, that would be the case with any
22   instruction manual for the 2910-100 that you've
23   seen, either during your tenure or existed prior
24   to your tenure; correct?
25        A.     That is correct.
```

Page 129

1        Q.      Now, this is not a large power product,

2    is it?

3        A.      It falls under powered instruments,

4    which he has...

5        Q.      Which comes under his umbrella?

6        A.      Yeah, his umbrella.

7        Q.      Okay.  Are either/or both of those

8    gentlemen still at the company?

9        A.      They are.

10       Q.      All right.  And what are their titles?

11       A.      Chris Sawford is manager of regulatory

12   affairs, Steve Mellott is director of marketing, I

13   believe.  I will have to check that.

14       Q.      Okay.  Now, Exhibit 7, the warnings,

15   the particular warnings that we looked at.

16       A.      Yes.

17       Q.      Where they say to read the instruction

18   manual, primarily.

19       A.      Correct.

20       Q.      Is there anything in Exhibit 7, these

21   specific warnings, that speaks to any warning

22   about excessive noise?

23       A.      No, there is not.

24       Q.      Is there anything in these warnings

25   that speaks to the risk of noise-induced hearing

1  loss?

2       A.    No, there is not.

3       Q.    And is there anything in these warnings

4  that cautions the operator or the end user to use

5  hearing protection?

6       A.    No, there is not.

7       Q.    All right.  Now, once legal counsel

8  decides that there needs to be a specific separate

9  warning, what's the process for creating

10  Exhibit 7, these separate warnings that we just

11  saw?

12       A.    The process is they will come back to

13  our regulatory affairs manager, Chris Sawford in

14  this case, and make the recommendation that we

15  create a specific warning.  We will draft it, send

16  it back to our legal counsel, if they approve it,

17  it will go through the normal DCO process, and be

18  attached to the applicable products.

19           MR. SHAPIRO:  All right.  Why don't we

20       take a five-minute break.

21           MR. YOSHIDA:  All right.

22

23           (Short break taken)

24

25           MR. SHAPIRO:  Let's mark this number 8.

 1    BY MR. SHAPIRO:

 2         Q.    And you are confident you turned over

 3    those repair documents to counsel?

 4         A.    Yes.

 5              MR. SHAPIRO:   Mark that.

 6

 7              (Deposition exhibit 9 marked for

 8         identification)

 9

10    BY MR. SHAPIRO:

11         Q.    Take a look at Exhibit 9, if you would,

12    sir.  What is Exhibit 9?

13         A.    This is the assembly drawing for the

14    Surgairtome Two manufactured by Hall Surgical now,

15    or, actually, ConMed.

16         Q.    ConMed Linvatec?

17         A.    Yes.

18         Q.    Previously manufactured by Hall?

19         A.    That is correct.

20         Q.    All right.  And you are familiar with

21    this drawing, you have seen it before?

22         A.    I have.

23         Q.    You saw it while you were at Hall

24    Surgical; correct?

25         A.    That's correct.

Page 137

1      Q.    Okay.  And how would you describe this

2  drawing?  Is this the top-level drawing of the

3  Surgairtome Two instrument?

4      A.    This is the top-level drawing, yes.

5      Q.    Okay.  Taking a look at the left-hand

6  side of the drawing, there's a part towards the

7  left-hand side that's entitled muffler; correct?

8      A.    Yes, sir.

9      Q.    All right.  And you are familiar with

10  that part?

11      A.    I am now.

12      Q.    All right.  You were at the time, were

13  you not?

14      A.    Yep, I was.

15      Q.    All right.  And this appears to be a

16  true and accurate copy of the top-level drawing

17  for the Surgairtome Two of which you are familiar

18  by virtue of working at Hall?

19      A.    Yes.

20          MR. SHAPIRO:  Okay.  Mark this as ten,

21      please.

22

23          (Deposition Exhibit 10 marked for

24      identification)

25

Erickson v. MicroAire Surgical Instruments
Deposition of: John Pascaloff

December 7, 2009

Page 138

```
 1   BY MR. SHAPIRO:
 2          Q.    Take a look at Exhibit 10, sir.  What
 3   is Exhibit 10?
 4          A.    It's the exhaust muffler.
 5          Q.    Okay.  Now, this is a component drawing
 6   for the exhaust muffler for the Surgairtome Two?
 7          A.    Yes, it is.
 8          Q.    Okay.  And that, just so we are clear,
 9   Exhibit 10, this component drawing would relate to
10   the muffler that we looked at, muffler part we
11   looked at in Exhibit 9; correct?
12          A.    Yes, it does.
13          Q.    Now, Exhibit 10, this component drawing
14   bears your signature; correct?
15          A.    It does.
16          Q.    Okay.  You checked this drawing while
17   you were at Hall Surgical; correct?
18          A.    I did.
19          Q.    Okay.  And you signed off on the
20   muffler exhaust drawing in 1980; correct?
21          A.    That's correct.
22          Q.    That was 12/17/1980?
23          A.    Yes, sir.
24          Q.    And that's your signature on the
25   document?
```

Page 139

1       A.      Yes, sir.

2       Q.      And this appears to be a true and

3   accurate copy of the component drawing for the

4   exhaust muffler that you signed off on for the

5   Surgairtome Two drill while you were at Hall?

6       A.      Yes, sir.

7       Q.      Okay.  So, when you came to MicroAire,

8   you were aware that Hall was utilizing an exhaust

9   muffler in the drill that you've identified as the

10  competitive counterpart to the 2910-100; correct?

11      A.      Well, that was 15 years before I came,

12  and I had forgotten about that.

13      Q.      Okay.  All right.  But, as you look at

14  these documents now?

15      A.      I can't argue it.

16      Q.      Okay.  And that is your signature on

17  the drawing; correct?

18      A.      It is.

19      Q.      Okay.  Does that refresh your memory

20  that Hall used an exhaust muffler in the

21  Surgairtome Two prior to your moving from Hall --

22      A.      They did.

23      Q.      -- to MicroAire?

24      A.      They did.

25              MR. YOSHIDA:   Don't overlap his

Page 140

1          question there.

2                    MR. SHAPIRO:  All right.

3     BY MR. SHAPIRO:

4          Q.    And you had indicated earlier -- and

5     this exhaust muffler, one of the purposes behind

6     this exhaust muffler was to lessen noise; correct?

7     A.      Correct.

8                    MR. SHAPIRO:  All right.  I don't have

9          anything further.

10                   MR. YOSHIDA:  All right.  Okay.  We are

11         done.

12                   We will reserve.

13                   MR. SHAPIRO:  Okay.

14

15                   (Deposition concluded at 2:11 p.m.)

16

17                   (Signature reserved)

18

19                       *  *  *  *  *

20

21

22

23

24

25

EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| JENNIFER FORSHEY, DMD, MD | NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| SOUND ORAL AND MAXILLOFACIAL SURGERY, P.S., a Washington Corporation; ROBERT TODD ERICKSON, DDS, and ANNE ERICKSON, and their marital community; and INTERMOUNTAIN EMPLOYMENT SOLUTIONS, INC., a Utah corporation, d/b/a ASCEND HR SOLUTIONS, | **JURY DEMANDED** |
| Defendants. | |

COMES NOW the Plaintiff Jennifer Forshey and complains of Defendants as follows:

**NATURE OF THE CASE**

1.   Defendant Sound Oral and Maxillofacial Surgery, P.S. (hereinafter "Sound Oral"), is an oral and maxillofacial surgery facility that maintains clinics in Tacoma and Gig Harbor, Washington.

2.   Dr. Jennifer Forshey was employed by Defendants Sound Oral and Ascend as an oral

COMPLAINT FOR DAMAGES- 1

**Teller & Associates**
1139 34th Avenue, Suite A
Seattle, WA 98122
(206) 324-8969  Fax: 860-3172

1  and maxillofacial surgeon until August 19, 2004, when she was wrongfully terminated for

2  opposing and refusing to allow an unlicensed person to administer anesthetic in violation of

3  Washington law.

4      3.    Defendant Intermountain Employment Solutions, Inc., d/b/a Ascend HR Solutions

5  (hereinafter "Ascend") contracted with Sound Oral to provide payroll, employee benefit, and

6  human resources services at all relevant times.  Defendant Ascend acted as joint employer with

7  Sound Oral at all relevant times.

8  **PARTIES, JURISDICTION, AND VENUE**

9      4.    Plaintiff, Jennifer Forshey, D.M.D., M.D., was a resident of Pierce County,

10  Washington, in this judicial district, at times material hereto.  Dr. Forshey is an oral and

11  maxillofacial surgeon, duly licensed as a physician in the State of Washington.  Dr. Forshey is

12  also a dentist duly licensed to practice in the State of New Jersey.  By virtue of reciprocity of

13  licensing, at all times material, Dr. Forshey was also duly licensed to practice dentistry in the

14  State of Washington.

15      5.    Dr. Forshey is now a resident of the State of Pennsylvania.

16      6.    Defendant Sound Oral is a Washington State incorporated Professional Service

17  Corporation, doing business in Pierce County, Washington, in this judicial district.  Defendant

18  Sound Oral employed Dr. Forshey.

19      7.    On information and belief, Defendants Dr. Robert Todd Erickson and Mrs. Anne

20  Erickson are the sole owners of Sound Oral.  They were Plaintiff's direct supervisors during her

21  employment.

22      8.    Defendant Ascend is a human resources management company based in Salt Lake

23  City, Utah, doing business in Pierce County, Washington, in this judicial district.

24      9.    The facts underlying this cause of action took place, in whole or in part, in Pierce

25  County, Washington, in this judicial district.

COMPLAINT FOR DAMAGES- 2

10. Jurisdiction and venue are proper in this Court by virtue of Diversity of Citizenship, and amount in controversy, as required under 28 U.S.C. §1332.

## FACTUAL ALLEGATIONS

11. Plaintiff Jennifer Forshey was hired to perform oral and maxillofacial surgery as an employee of Sound Oral and Ascend in March 2004, under a one-year employment contract entitled the "Associate Agreement" (hereinafter "Agreement").

12. Attached as Exhibit A is an accurate copy of the Agreement.

13. Under the Agreement, Defendant Sound Oral reserved the right to terminate Dr. Forshey only upon the occurrence of certain events, none of which occurred.

14. Under the Agreement, Dr. Forshey was not permitted for a period of two years following the termination of her employment to perform oral and maxillofacial surgery in Pierce County, Washington.

15. Under the Agreement, Dr. Forshey agreed to follow and abide by the ethics of the dental profession and all applicable federal, state, and local laws, rules, and regulations.

16. During Dr. Forshey's employment, Defendant Sound Oral, together with Defendant Ascend, distributed an employee handbook to its employees, which contained the following:

> Ascend HR Solutions is a Professional Employer Organization. When a business, such as Sound Oral and Maxillofaical Surgery, contracts with Ascend- we become co-employers with that business.
>
> 104 Business Ethics and Conduct
> We expect employees to be ethical in their conduct. It effects our reputation and success. Your company requires employees to carefully follow all laws and regulations, and have the highest standards of conduct and personal integrity.
> If you are not sure if an action is ethical or proper, you should discuss the matter openly with your supervisor. If necessary, you may also contact the Office Manager for advice and consultation.
>
> 209 Performance Evaluation
> We encourage you and your supervisor to discuss job performance and goals on an informal, day-to-day basis. In addition, you and your supervisor will have formal performance evaluations to discuss your work and goals, to identify and correct weakness, and to encourage and recognize strengths.

COMPLAINT FOR DAMAGES- 3

**Teller & Associates**
1139 34th Avenue, Suite A
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

17. Dr. Forshey received a copy of Defendants' handbook, read the above policies and relied upon them.

18. Dr. Forshey's direct supervisor was Defendant R. Todd Erickson, co-owner of Sound Oral.

19. Defendant Anne Erickson is co-owner of Sound Oral and Dr. Erickson's wife. Defendant Anne Erickson was involved in the management and administration of Sound Oral.

20. Dr. Forshey performed her duties and responsibilities in a satisfactory manner at all times prior to her termination. She was present each workday, treated all patients as scheduled, practiced her profession on patients at a satisfactory (or better) level of quality, and performed all required administrative and marketing duties.

21. No patients complained about her work quality or manner.

22. Numerous referring physicians and dentists expressed satisfaction with the quality of her work.

23. Dr. Forshey generated referrals of new patients to Sound Oral through her marketing efforts and work quality.

24. At no time during her employment did Dr. Forshey receive notice from her employer that she was not performing to acceptable standards.

25. Dr. Forshey requested but did not receive performance evaluations during her employment with Sound Oral and Ascend.

26. Dr. Forshey never received negative written feedback in any form about her performance of her duties or her relationship with her employer.

27. Beginning in June, Defendant Sound Oral scheduled Dr. Forshey to see patients every workday and required Dr. Forshey to perform marketing and administrative duties on her own time.

28. A license is required to administer general or injected local anesthetic (hereinafter

COMPLAINT FOR DAMAGES- 4

1   "anesthetics") to patients in connection with a dental operation.

2      29.  RCW 18.130.180 and WAC 246-817-540 prohibit dentists from allowing unlicensed

3   individuals to practice where a license is required.

4      30.  In approximately June 2004, Defendant Todd Erickson hired Michael Serrianne as an

5   employee of Defendants Sound Oral and Ascend.

6      31.  Dr. Erickson directed Mr. Serrianne to place intravenous anesthetics lines and

7   administer intravenous anesthetics to Sound Oral patients. This activity continued throughout

8   Dr. Forshey's employment with Defendants.

9      32.  At no time was Michael Serrianne licensed to administer anesthetics in the State of

10   Washington.

11      33.  Defendant Todd Erickson instructed Dr. Forshey to allow Mr. Serrianne to administer

12   anesthetics for Dr. Forshey's patients, and stated that Mr. Serrianne would "function as a nurse"

13   for Sound Oral.

14      34.  Beginning in early July 2004, Dr. Forshey voiced to Defendant Todd Erickson and to

15   Practice Administrator Ruth Sheppard her concerns about the legality of Mr. Serrianne acting in

16   this capacity without a license.

17      35.  Dr. Forshey opposed Dr. Erickson's instructions to allow Mr. Serrianne to administer

18   anesthetics to her patients.  She refused to allow him to do so because of her ongoing concerns

19   that to allow him to do so would violate state law.

20      36.  In response, Dr. Erickson assured Dr. Forshey that Mr. Serrianne was legally permitted

21   to administer anesthetics under Dr. Erickson's supervision.

22      37.  Dr. Forshey asked Dr. Erickson to write a memo to Mr. Serrianne's personnel file

23   stating that Mr. Serrianne was permitted to administer intravenous medications without a license

24   as long as he did so under Dr. Erickson's supervision. Dr. Erickson agreed to write the memo.

25      38.  Dr. Forshey was not given a copy of the memo, if it was ever written.

COMPLAINT FOR DAMAGES- 5

**Teller & Associates**
1139 34th Avenue, Suite A
Seattle, WA  98122
(206) 324-8969  Fax: 860-3172

39. Dr. Forshey herself asked Mr. Serrianne for documentation showing he was certified and qualified to administer anesthetics.

40. On or about July 29th, Sound Oral received a letter from Mr. Serrianne's former employer, an oral surgeon, indicating that Mr. Serrianne had established intravenous access for her patients. A true and correct copy of this letter is attached as Exhibit B.

41. Dr. Erickson relied on this letter to show that Mr. Serrianne was qualified to legally administer anesthetics.

42. After Dr. Forshey brought the issue to Dr. Erickson's attention, Dr. Erickson continued to allow Mr. Serrianne to administer anesthetics to patients without a license.

43. At no time did Dr. Erickson suspend Mr. Serrianne's administration of anesthetics to patients in order to investigate Dr. Forshey's concerns.

44. Beginning in July 2004, and continuing to August 19, 2004, the date of her termination, Dr. Forshey continued to refuse to allow Mr. Serrianne to administer anesthetics to her patients. Dr. Forshey made it clear that she did not believe Mr. Serrianne was practicing legally, despite Dr. Erickson's assurances.

45. On August 19, 2004, Defendant Sound Oral discharged Dr. Forshey from employment.

46. Defendant Anne Erickson and Attorney Laura Wesselmann, of Harlow & Hitt, were present at the termination meeting.

47. When Dr. Forshey was terminated, Ms. Wesselmann informed her the reason for termination was "the relationship is not working out." Dr. Forshey was not permitted to ask clarifying questions regarding her termination or the terms of her employment contract.

48. On June 11, 2005, Dr. Forshey filed a complaint with the Department of Health outlining these illegal activities.

49. On February 16, 2006, the Department of Health issued a Cease and Desist letter to Michael Serrianne, finding that he practiced as a nurse without a license.

COMPLAINT FOR DAMAGES- 6

50. A true and correct copy of the Cease and Desist Order is attached as Exhibit C.

51. It was a violation of RCW 18.79.030 for Mr. Serrianne to practice as a registered or practical nurse without a license by administering anesthetics to patients.

52. On May 15, 2006, the State of Washington Department of Health Dental Quality Assurance Commission issued a Statement of Charges alleging that Dr. R. Todd Erickson aided and abetted Mr. Serrianno in the unlicensed administration of general or injected local anesthetic.

53. A true and correct copy of the Statement of Charges is attached as Exhibit D.

54. It was a violation of RCW 18.130.180 and WAC 246-817-540(4) for Dr. Erickson to allow Mr. Serrianne to administer anesthetics to patients.

55. Dr. Forshey's opposition to Dr. Erickson's and Mr. Serrianne's illegal practice was a substantial or significant factor in Defendant's decision to terminate her employment.

### CAUSES OF ACTION

The above paragraphs are herein incorporated by this reference.

1. **Wrongful Discharge in Violation of Public Policy.** Defendants' decision to terminate Dr. Forshey constitutes wrongful discharge in violation of public policy

2. **Breach of Employment Contract.** Defendants' decision to terminate Dr. Forshey was contrary to her employment contract with Defendants and constitutes a common law breach of contract. As a proximate result of Defendants' breaches, Dr. Forshey has been damaged in an amount to be proven at trial.

3. **Other.** Defendant has asserted false reasons for Dr. Forshey's termination from employment, obscuring the true reasons, and continues to make false statements and pursue unfounded claims against her. Dr. Forshey therefore reserves the right to conduct discovery into alternative claims and to amend these charges as necessary.

**WHEREFORE,** Dr. Forshey prays for judgment against the above named

COMPLAINT FOR DAMAGES- 7

**Teller & Associates**
1139 34th Avenue, Suite A
Seattle, WA  98122
(206) 324-8969   Fax: 860-3172

Defendants, jointly and severally as follows:

1. That she be repaid all lost wages, past wages, benefits and out of pocket expenses, in amounts to be proven at trial;

2. That she receive "front pay" and benefits, in amounts to be proven at trial;

3. That she be awarded prejudgment interest;

4. That she receive damages for impaired future earning capacity, in amounts to be proven at trial;

5. That she be awarded damages for humiliation, loss of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, sadness, anger, anxiety, anguish and other forms of emotional and physical distress she has experienced, in an amount to be proven at trial;

6. That she be awarded contractual and all other actual damages;

7. That the court award attorneys' fees and actual costs;

8. For such other and further relief as this court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury of 12 of her peers.

DATED this 14th day of June, 2006.

_Stephen Teller_

_____

Stephen Teller WSBA # 23372
Sharon McConnell WSBA #36653
of Teller and Associates,
Attorneys for Plaintiff Jennifer Forshey

COMPLAINT FOR DAMAGES- 8

# Exhibit A

## ASSOCIATE AGREEMENT

THIS ASSOCIATE AGREEMENT (this "Agreement") is executed this 5ᵗʰ day of February , 2004 and effective March 1, 2004 (the "Effective Date"), by and between Sound Oral & Maxillofacial Surgery, P.C. (the "Employer") and Jennifer Forshey, D.M.D., M.D. (the "Employee").

### Explanatory Statement

A.      The Employer is engaged in the practice of oral and maxillofacial surgery at 1628 South Mildred Street, Suite 210, Tacoma, Washington 98465, Washington (the "Practice").

B.      The Employee is an oral and maxillofacial surgeon and will be licensed to practice as such in the State of Washington on or before the Effective Date.

C.   ·   The Employer desires to employ the Employee to practice oral and maxillofacial surgery, and the Employee is willing to accept such employment upon the terms and conditions hereinafter provided.

NOW, THEREFORE, in consideration of the Explanatory Statement, which shall be deemed to be a substantive part of this Agreement, and the mutual covenants, promises, agreements, representations and warranties hereinafter set forth, the parties hereto agree as follows:

1.      **Employment; Related Fees and Income.**

1.1      The Employer agrees to employ the Employee upon the Effective Date as an employee\associate to render oral and maxillofacial surgery services in connection with the Employer's practice of oral and maxillofacial surgery, and the Employee shall render such other and further services for and on behalf of the Employer as may be assigned from time to time to the Employee by the Employer (the "Services"). The Employee hereby accepts such employment with the Employer and agrees to render the Services pursuant to the terms and conditions set forth in this Agreement.

1.2      Any and all income, compensation, fees and revenue received by the Employee arising out of, in connection with or related to the practice of oral and maxillofacial surgery, and/or the Services shall be remitted by the Employee to the Employer.

2.      **Term.**

The term of this Agreement shall be for one (1) year commencing on the Effective Date (the "Term"), with automatic one (1) year renewal terms (a "Renewal Term"), unless either the Employer or the Employee terminate this Agreement by notice to that effect at least ninety (90) days prior to the end of the Term or any Renewal Term. All references in this Agreement to the Term shall mean and include each Renewal Term.

© Copyright - Levin Group, Inc. 2002
190224 3 2/20/04

3.    **Performance of Services.**

3.1    During the Term of this Agreement, the Employee shall devote all of her business time, effort and energy, pursuant to the schedule set forth on Exhibit "A" attached hereto and incorporated by reference herein, to the Practice and shall render the Services to the best of her ability for and on behalf of the Employer. The Employee agrees that in the rendition of the Services, and in all aspects of her employment, she shall comply with the policies, standards and regulations (oral or in writing) of the Employer established from time to time. The Employee agrees to follow and abide by the ethics of the dental profession and all applicable federal, state and local laws, rules and regulations.

3.2    During the Term of this Agreement, the Employee shall not, without the prior written consent of the Employer, at any time or place, directly or indirectly, engage or agree to engage in the practice of oral or maxillofacial surgery or render dental related services, directly or indirectly, to or for the benefit of any other person or entity to any extent whatsoever.

3.3    The Employee shall perform such administrative and marketing duties at least one (1) day per week. The Employee shall be reimbursed for all of her legitimate costs and expenses associated with such marketing efforts, subject to the provisions of Section 9 of this Agreement.

4.    **Compensation.**

4.1    In consideration of and as full and total compensation for all Services, the Employer shall pay to the Employee during the Term a base salary of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Base Salary"). In addition to the Base Salary, the Employer shall pay the Employee additional compensation (the "Additional Compensation") at the end of each calendar year equal to twenty percent (20%) of all adjusted collections for the Services in excess of Six Hundred Thousand Dollars ($600,000.00) collected during such calendar year. During calendar year 2004, the $600,000.00 threshold will be prorated based on the actual number of weeks the Associate works for the Employer in 2004. Base Salary and Additional Compensation shall hereafter be collectively referred to as "Compensation."

4.2    To the extent that the Employee qualifies for any profit sharing or retirement plan of the Employer, all contributions by the Employer to any such plan on behalf of the Employee shall be included within and deducted from the Compensation.

4.3    Notwithstanding anything to the contrary contained in this Agreement, no Compensation shall be paid in respect of any period subsequent to the termination of this Agreement for any reason whatsoever, provided the Employee shall be paid the Compensation due for all periods prior to such termination. Payment of Compensation shall be subject to the customary withholding tax and other employment taxes as required with respect to compensation paid by a corporation to an employee. Except upon breach of this Agreement by the Employee, upon and after termination of the Employee's employment under this Agreement, the Employee shall receive all Compensation for the Services.

4.4    The Employer agrees to provide the Employee with a reconciliation of the determination of the Compensation upon request.

5.   **Employee Requirements.**

5.1     Notwithstanding anything to the contrary contained herein, prior to commencement of the Term, the Employee shall have the following licenses, permits, registrations or certifications:

5.1.1   Washington State Dental License ("WSDA");

5.1.2   Washington State General Anesthesia Permit;

5.1.3   DEA Registration;

5.1.4   Specialty License, if required by Washington State Law; and

5.1.5   ACLS Certification.\

5.2     The Employee agrees to obtain a Washington State Medical License by September 1, 2004.

5.3     The Employer agrees that commencing in the initial Renewal Term and annually thereafter, the Employer will pay the Employee's annual costs for the licenses, permits, registrations and certifications listed in Sections 5.1.1 – 5.1.5 above.

5.4     The Employee shall maintain the highest level of professional competence during the Term. The Employee further agrees to use her best efforts in rendering the Services.

6.   **Vacation and Sick Leave.**

6.1     During the Term, the Employee shall be entitled to up to four (4) weeks of paid vacation, inclusive of sick leave and leave for continuing education, during the Term upon . prior written notice and approval by the Employer. The Employee acknowledges sick leave shall only be used in cases of extreme illness or other life crises.

7.   **Malpractice Insurance; Certain Benefits.**

7.1     Throughout the Term, the Employer shall pay the cost of the Employee's professional malpractice insurance, which shall include the Employer as a named insured. Upon termination of the Employee's employment hereunder, the Employee shall pay the cost of a "tail" to the Employee's malpractice insurance naming the Employer as an additional insured.

7.2     Throughout the Term, the Employer shall provide the Employee and her family with the same health care insurance coverage as the Employer provides for all other employees of the Employer.

7.3     Throughout the Term, the Employer shall pay the Employee's annual costs for her dues for membership in AAOMS, WSDA, PCDS, WSSOMS and ADA.

7.4     Throughout the Term, the Employer shall pay the Employee's costs of continuing education and related travel up to Two Thousand Five Hundred Dollars ($2,500.00), provided the Employer pre-approves all such continuing education programs.

7.5     The Employer will reimburse the Employee for her business related costs for a cellular telephone up to One Hundred Dollars ($100.00) monthly.

7.6     The Employer will reimburse the Employee up to Three Thousand Dollars ($3,000.00) towards her cost of relocating to the State of Washington.

8.      **Death of Employee or President of Employer.**

8.1     In the event of the death of the Employee during the Term, this Agreement and the Employee's employment hereunder shall terminate, whereupon neither party shall have any further rights or obligations under this Agreement, except with respect to Compensation as provided in Section 4 hereof.

8.2     Upon the death of the President of the Employer during the Term, this Agreement and the Employee's employment hereunder may be terminated upon thirty (30) days prior written notice, whereupon neither party shall have any further rights or obligations under this Agreement. Notwithstanding the foregoing, during the aforesaid thirty (30) day period, the Employee shall have the exclusive option to negotiate with either the Employer or the estate of the President of the Employer for the purchase of the Practice. The Employer agrees to negotiate exclusively and in good faith with the Employee during said thirty (30) day period to sell the Practice to the Employee upon mutually agreeable terms and provisions.

9.      **Reimbursements of Certain Expenses.**

Any payment made by the Employer to or for the benefit of the Employee under this Agreement which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service or State of Washington taxing authority shall be reimbursed by Employee to the Employer to the full extent of such disallowance. In lieu of payment by the Employee, proportionate amounts may be deducted from the Compensation.

10.     **Confidential Information.**

10.1    The Employee acknowledges that in the Employee's employment hereunder, the Employee will be making use of, acquiring and adding to confidential information of a special and unique nature and value relating to such matters as, but not limited to, the Employer's business operations, internal structure, financial affairs, systems, procedures, and lists of patients and referrers of patients, as well as the nature of services and methods used and preferred by the Employer's patients and the fees paid by such patients, all of which shall be deemed to be confidential information. In consideration of employment by the Employer, the Employee agrees that during the Term and upon and after leaving the employ, of the Employer for any reason whatsoever, the Employee shall not, for any purpose whatsoever, directly or indirectly, disclose to any person or entity any confidential information which was obtained by the Employee as a result of the Employee's employment with the Employer and shall hold all of the same inviolate.

10.2    All financial books, records, instruments and documents; patient lists; data; reports; programs; software; tapes; rolodexes; telephone and address books; card decks; listings; programming; and any other instruments, records of documents relating or pertaining to

patients serviced by the Employer or the Employee, the Services rendered by the Employee, or the Employer (collectively, the "Records") shall at all times be and remain the property of the Employer. Upon termination of this Agreement and the Employee's employment under this Agreement for any reason whatsoever, the Employee shall return to the Employer all Records (whether furnished by the Employer or prepared by the Employee), and the Employee shall neither make nor retain any copies of any of such Records after such termination.

10.3    The parties to this Agreement agree to keep the terms and provisions of this Agreement confidential, except as may be required by law or as otherwise may be required to enforce the provisions of this Agreement.

## 11.    Indemnity.

11.1    The Employee shall indemnify the Employer, and hold the Employer harmless from and against any and all actions, suits, proceedings, liabilities, damages, losses, costs and expenses (including attorneys' and experts' fees) arising out of or in connection with any breach or threatened breach by the Employee of any one or more provisions of this Agreement. Notwithstanding anything to the contrary contained herein, the provisions of this Section shall survive the termination of this Agreement.

11.2    The Employer shall indemnify the Employee, and hold the Employee harmless from and against any and all actions, suits, proceedings, liabilities, damages, losses, costs and expenses (including attorneys' and experts' fees) arising out of or in connection with any breach or threatened breach by the Employer of any one or more provisions of this Agreement. Notwithstanding anything to the contrary contained herein, the provisions of this Section shall survive the termination of this Agreement.

## 12.    Restrictive Covenants.

12.1    The Employer and the Employee acknowledge and agree that the Employee's Services are of a special and unusual character which have a unique value to the Employer, the loss of which cannot be adequately compensated by damages in an action at law. Further, the Employer and the Employee acknowledge and agree that the Employee's employment entails substantial personal contacts with the patients of the Employer and referrers of patients to the Employer who are likely to develop strong business and personal ties and goodwill with the Employee rather than the Employer, and as a result, it is likely that such patients and referrers of patients would follow the Employee in the event the Employee ceased to be employed by the Employer. Because of the unique value to the Employer of the Services for which the Employer has contracted hereunder, the nature of the Employee's personal contact with patients of the Employer, and because of the confidential information to be obtained by the Employee, all as aforementioned, and in consideration of employment by the Employer, the Employee covenants and agrees that for a period of two (2) years after the Employee ceases to be employed by the Employer for any reason whatsoever, the Employee shall not, without the prior written consent of the Employer, directly or indirectly:

12.1.1    Offer to render any oral and maxillofacial or related services or solicit the rendition of any oral and maxillofacial or related services to any patients of the

Employer and/or referrers of patients to the Employer to or for the benefit or account of the Employee or to or for the benefit or account of any other person or entity.

12.1.2 Render or attempt to render oral and maxillofacial or related services to any patients of the Employer or patients of referrers of patients to the Employer to or for the benefit or account of the Employee or to or for the benefit or account of any other person or entity.

12.1.3 Solicit for employment or employ, directly or indirectly, any employee of the Employer, nor shall the Employee urge, directly or indirectly, any patient, or referrer of patients to discontinue, in whole or in part, business with the Employer or not to do business for the Employer for a period of two (2) years from and after the termination of employment.

12.2 Upon termination of the Employee's employment hereunder for any reason whatsoever, and for a period of two (2) years thereafter, the Employee agrees that within Pierce County, Washington, the Employee will not, directly or indirectly, whether as a principal, sole proprietor, partner, member, officer, director, employee, agent, independent contractor, consultant, adviser or otherwise, engage in any form of the practice of or business of oral and maxillofacial surgery, whether directly or indirectly.

12.3 The provisions of Sections 12.1.1,12.1.2,12.1.3 and 12.2 of this Agreement are cumulative. Compliance with Sections 12.1.1, 12.1.2, 12.1.3 and 12.2 of this Agreement is a condition precedent to the Employer's obligation to make any payments of any nature to Employee, whether under this Agreement or otherwise. Nothing in this Agreement shall be construed as prohibiting the Employer from pursuing any other remedies available to it for a breach or threatened breach of Sections 10 and 12 of this Agreement.

12.4 The parties hereto agree that to the extent that any provisions of this Section shall be determined to be unenforceable by a court of competent jurisdiction, then any such provision shall be deemed to be modified to the extent necessary in order that any such provision shall be legally enforceable to the fullest extent permitted by applicable law.

12.5 The Employee acknowledges that the restrictive covenants contained in this Agreement are fair and reasonable, and further, that enforcement by the Employer and compliance by the Employee of such restrictive covenants will not unduly burden the Employee or otherwise preclude the Employee from earning a living within the State of Washington.

13. **Termination of Employment.**

The Employer shall have the right to terminate this Agreement and the Employee's employment hereunder at any time upon the occurrence of any one or more of the following events: (i) the breach by the Employee of any material covenant, promise, agreement, representation or warranty under this Agreement; (ii) the cancellation, revocation or suspension of the Employee's right or license to practice as an oral and maxillofacial surgeon in the State of Washington; (iii) the placement or imposition of any restrictions or limitations, by any governmental authority having appropriate jurisdiction, upon the Employee so that he cannot engage in the practice of oral and maxillofacial surgery to the same extent as of the Effective

Date; (iv) if the Employee shall, after reasonable notice, continue to fail or refuse to comply with the policies, standards or regulations of the Employer from time to time established; (v) conviction of the Employee of any felony or crime of moral turpitude; (vi) the death of the Employee; (vii) the death of the Employer (subject to the Employee's exclusive option period as provided in Section 8.2 above); (viii) for cause; and (ix) missing in excess of thirty (30) days of work (whether on paid or unpaid leave) for sickness, disability, or any other reason during the Term. Upon termination of this Agreement pursuant to this Section 13, neither party shall thereafter have any further rights, duties or obligations under this Agreement, except for the Employee's obligations and duties under Sections 10, 11 and 12 hereof, which Sections shall survive the termination of this Agreement for any reason whatsoever.

14. **Future Partnership.**

The Employer and the Employee acknowledge that one of the goals of the employment arrangement hereunder will be to determine during the second half of the initial Renewal Term if the Employer and the Employee are compatible for purposes of the Employee entering into a buy-in arrangement with the Employer. In that regard, the Employer and the Employee agree that prior to the end of the initial Renewal Term, the Employer and the Employee will discuss the possibility and timing of the Employee entering into a buy-in arrangement with the Employer. If both the Employer and the Employee agree at that time that a buy-in arrangement is desirable, the Employer and the Employee agree to negotiate in good faith a mutually agreeable buy-in arrangement for the Employee to become a partner/principal of the Employer. The precise buy-in structure, purchase price, payment methodology, as well as the overall financial terms must be determined and mutually agreeable to both the Employer and the Employee, and both the Employer and the Employee agree to work together diligently in order to accomplish a mutually acceptable buy-in arrangement.

15. **Notices.**

All notices and other communications required or permitted to be given by this Agreement shall be in writing and shall be given and shall be deemed received if and when either hand delivered and a signed receipt is given therefor or mailed by registered or certified U.S. mail, return receipt requested, postage prepaid, or by overnight delivery with receipted service therefor, and if to the Employer to:

> Robert Todd Erickson, D.D.S.
> 8715 Rosedale Street, N.W.
> Gig Harbor, Washington 98335

If to Employee:

> Jennifer Forshey, D.M.D., M.D.
> 9521  56th St. SW  Apt 303 HH
> Lakewood, WA

or to such other addresses as any party hereto may hereafter give notice of to the other as provided in this sub-section.

16. Miscellaneous.

16.1 This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement may not be assigned by Employee.

16.2 The terms and provisions hereof may not be modified except by a written instrument by the party against whom such modification is sought to be enforced.

16.3 The use of any gender herein shall be deemed to be or include the other genders and the neuter and the use of the singular herein shall be deemed to be and include the plural (and vice versa), wherever appropriate.

16.4 This Agreement shall be governed by and enforced and construed in accordance with the laws of the State of Washington.

16.5 This Agreement sets forth the entire, integrated understanding and agreement of the parties with respect to the subject matter hereof.

16.6 The headings contained within this Agreement are included solely for the convenience of reference and shall be given no effect in the construction of this Agreement.

16.7 In the event of any dispute under this Agreement which leads to a litigation proceeding, the substantially prevailing party shall be entitled to collect all of their reasonable attorneys' and related fees associated with such litigation.

IN WITNESS WHEREOF, the parties hereto have executed, sealed and delivered this Employment Agreement the day and year first hereinabove written.

WITNESS:                                EMPLOYER:

                                        SOUND ORAL & MAXILLOFACIAL
                                        SURGERY, P.C.

                                        By: _____
                                            Robert Todd Erickson, D.D.S., President

                                        EMPLOYEE:

                                        _____ 2/5/2004
                                        Jennifer Forshey, D.M.D., M.D.

## EXHIBIT "A"
## TO
## EMPLOYMENT AGREEMENT

## SCHEDULE OF EMPLOYMENT
## OF JENNIFER FORSHEY, D.M.D., M.D.

Mondays -

Tuesdays —

Wednesday -              ..          To be determined by the mutual agreement of
                                     the Employer and the Employee.

Thursdays --

Fridays -

Saturdays -

The exact days and times will be determined by mutual agreement of the Employer and
the Employee, provided the Employee averages not less than five (5) days per week
during the Term, including one (1) day per week to be dedicated to administrative and
marketing activities.

Exhibit B

# Memorandum

| | |
|---|---|
| **To:** | Dr. Todd Erickson |
| **CC:** | |
| **From:** | Dr. Denise E. Clarke |
| **Date:** | 07/29/04 |
| **Re:** | Michael Serrianne |

Dear Todd:

Michael asked me to write a note in reference to his roles and responsibilities relative to establishing IV's.

During the course of Michael's employment in our office, Michael did start IV infracath access for our patients. Michael was extremely competent in establishing IV access.

I hope everything is going well in your new office in Gig Harbor. Michael will be an asset to your practice.

All the best, 

Denise E. Clarke  M.S. Ed., D.M.D.
Oral & Maxillofacial Surgery
902 East 8th Street
Port Angeles, WA 98362
360-457-9470

CONFIDENTIAL

1

Exhibit C

Exhibit C

## STATE OF WASHINGTON
## DEPARTMENT OF HEALTH
## SECRETARY OF HEALTH
## UNLICENSED PRACTICE PROGRAM

| | |
|---|---|
| In the Matter of the Unlicensed Practice of Nursing of:<br><br>**MICHAEL SERRIANNE**<br><br>Respondent. | Docket No. 05-10-B-1045UR<br><br>STIPULATED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND AGREED ORDER TO CEASE AND DESIST |

The Unlicensed Practice Program (Program), by and through Elyette Weinstein, Department of Health Staff Attorney, and Michael Serrianne, Respondent, represented by Joan K. Mell, Attorney, stipulate and agree to the following:

### Section 1: PROCEDURAL STIPULATIONS

1.1 The Unlicensed Practice Program of the Department of Health has served on Respondent a Notice of Intent to Issue Cease and Desist Order (Notice), under the above docket number, which alleges that Respondent engaged in conduct which constitutes practice as a licensed registered and/or practical nurse in the state of Washington without a license.

1.2 Respondent understands that the state of Washington is prepared to proceed to a hearing on the allegations in the Notice.

1.3 Respondent understands that he has the right to defend himself against the allegations in the Notice by presenting evidence at a hearing.

1.4 Respondent understands that the Secretary of Health has the power and authority to issue a permanent Cease and Desist Order and impose a fine under RCW 18.130.190.

1.5 Respondent and the Program agree to expedite the resolution of this matter by means of this Stipulated Findings of Fact, Conclusions of Law, and Agreed Order to Cease and Desist (Agreed Order).

STIPULATED FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND AGREED ORDER TO CEASE AND DESIST
Docket No. 05-10-B-1045UR

PAGE 1 OF 5

ORIGINAL

1.6     Respondent waives the opportunity for a hearing on the Notice contingent upon signature and acceptance of this Agreed Order by the Secretary of Health.

1.7     This Agreed Order is not binding unless and until it is signed and accepted by the Secretary of Health.

1.8     Should this Agreed Order be rejected, Respondent waives any objection to the participation at hearing of the Health Law Judge who heard the Agreed Order presentation and waives any right to further reconsideration or to judicial review of this Agreed Order under RCW 34.05.510 et seq.

### Section 2: STIPULATED FACTS

Respondent and the State stipulate and agree to entry of the following findings of fact:

2.1     Michael Serrianne has never been licensed in the state of Washington as a registered or practical nurse. .

2.2     During Mr. Serrianne's employment with an oral surgery office from on or about June 2004 through on or about March 2005, Mr. Serrianne placed intravenous lines and assisted with anesthesia at the direction of an oral surgeon.

### Section 3: CONCLUSIONS OF LAW

Respondent and the state of Washington stipulate and agree to entry of the following conclusions of law based on the stipulated findings of fact, above. Respondent agrees to entry of the following Conclusions of Law solely for the purpose of settlement:

3.1     The facts described in Paragraph 2.2 above establish that Respondent has performed activities in Washington State, without a license to practice as a registered or practical nurse, constituting violation of RCW 18.79.030(1) and (3).

3.2     The Secretary of Health, acting through the Health Law Judge, Presiding Officer, has jurisdiction over Respondent and over the subject matter of this proceeding under RCW 18.130.190.

STIPULATED FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND AGREED ORDER TO CEASE AND DESIST
Docket No. 05-10-B-1045UR

PAGE 2 OF 5

3.3     The Secretary of Health, acting through the Health Law Judge, Presiding Officer, has the power and authority to issue a permanent Cease and Desist Order and Impose a fine under RCW 18.130.190.

3.4     The stipulated findings of fact and conclusions of law herein constitute grounds for the issue of a permanent Cease and Desist Order under RCW 18.130.190.

### Section 4: AGREED ORDER

Based on the preceding stipulated Findings of Fact and Conclusions of Law, the state of Washington and Respondent hereby stipulate and agree to the terms and conditions of this Agreed Order:

4.1     Respondent shall permanently **CEASE AND DESIST** from engaging in any and all conduct that requires a state of Washington nursing credential unless he has obtained appropriate licensure or otherwise meets an exemption.

4.2     Respondent is assessed a civil fine in the amount of ten thousand dollars ($10,000.00). Nine Thousand Five Hundred Dollars ($9,500.00) of the fine shall be STAYED, provided Respondent complies with all terms and conditions of this Order. The unstayed portion of the fine shall be paid within six (6) months of the effective date of this Order by certified or cashier's check or money order, made payable to the Department of Health, and mailed to the Department of Health, Unlicensed Practice Program, P.O. Box 1099, Olympia, WA 98507-1099.

4.3     The effective date of this Agreed Order is the date that the Adjudicative Service Unit places the signed Agreed Order into the U.S. mail. The Respondent shall not submit any fees and/or compliance documents until after the effective date of this Agreed Order.

//

//

//

STIPULATED FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND AGREED ORDER TO CEASE AND DESIST
Docket No. 05-10-B-1045UR

PAGE 3 OF 5

I, MICHAEL SERRIANNE, hereby certify that I have read this stipulated Findings of Fact, Conclusions of Law, and Agreed Order to Cease and Desist in its entirety; that my counsel of record, Joan K. Mell, Attorney, has fully explained the legal significance and consequence of it; that I fully understand and agree to all of it; and that it may be presented to the Secretary of Health without my appearance. If the Secretary of Health accepts this stipulated Findings of Fact, Conclusions of Law, and Agreed Order to Cease and Desist, I understand that I will receive a signed copy.

MICHAEL SERRIANNE
Respondent

2/8/06

Date

Acknowledged as to form only.

JOAN K. MELL, WSBA #21319
Attorney for Respondent

2-8-06

Date

STIPULATED FINDINGS OF FACT,                                         PAGE 4 OF 5
CONCLUSIONS OF LAW,
AND AGREED ORDER TO CEASE AND DESIST
Docket No. 05-10-B-1045UR

## Section 5: ORDER

The Secretary of Health accepts and enters this stipulated Findings of Fact,

Conclusions of Law, and Agreed Order to Cease and Desist.

DATED this 16ᵗʰ day of February 2006.

STATE OF WASHINGTON
DEPARTMENT OF HEALTH
SECRETARY OF HEALTH
UNLICENSED PRACTICE PROGRAM

Health Law Judge, Presiding Officer
Arthur E. DeBusschere

Presented by:

ELYETTE WEINSTEIN, WSBA #14227
Department of Health Staff Attorney

2/10/06

Date

INTERNAL TRACKING NUMBER                    PROGRAM NO. 2005-07-0003U!

STIPULATED FINDINGS OF FACT,                    PAGE 5 OF 5
CONCLUSIONS OF LAW,
AND AGREED ORDER TO CEASE AND DESIST
Docket No. 05-10-B-1045UR

Exhibit D

Exhibit D

## STATE OF WASHINGTON
## DEPARTMENT OF HEALTH
## DENTAL QUALITY ASSURANCE COMMISSION

FILED

MAY 1 0 2006

Adjudicative Clerk Office

In the Matter of the License to Practice
as a Dentist of

**ROBERT T. ERICKSON**
License No. DE00006354

Respondent

Docket No. 06-01-A-1051DE

**STATEMENT OF CHARGES**

The Health Services Consultant, on designation by the Dental Quality Assurance
Commission, (Commission) makes the allegations below, which are supported by the
evidence contained in program file number 2005-06-0019. The patient referred to in this
Statement of Charges is identified in the attached Confidential Schedule.

### Section 1: ALLEGED FACTS

1.1     Robert T. Erickson, D.D.S., Respondent, was issued a license to practice
as a dentist by the state of Washington in June 1989. Respondent's license
is currently active.

1.2     From on or about July 2004 through on or about April 2005, Respondent
supervised and directed a practitioner, not licensed in the state of Washington, in the
placement and administration of medications through intravenous lines to patients
during oral surgery.

### Section 2: ALLEGED VIOLATIONS

2.1     Based on the facts in Section 1, Respondent has committed
unprofessional conduct in violation of RCW 18.130.180(7) and (10) based on WAC
246-817-540(4) which provide in part:

> **RCW 18.130.180 Unprofessional conduct.** The following
> conduct, acts, or conditions constitute unprofessional
> conduct for any license holder or applicant under the
> jurisdiction of this chapter:
>
> * * *
>
> (7) Violation of any state or federal statute or administrative
> rule regulating the profession in question, including any

STATEMENT OF CHARGES
Docket No. 06-01-A-1051DE

**ORIGINAL**

PAGE 1 OF 3
SOC - REV. 10-05

statute or rule defining or establishing standards of patient care or professional conduct or practice;

* * *

(10) Aiding or abetting an unlicensed person to practice when a license is required;

* * *

**WAC 246-817-540 Acts that may not be performed by unlicensed persons.** No dentist shall allow an unlicensed person who is in his/her employ or is acting under his/her supervision or direction to perform any of the following procedures:

* * *

(4) Any administration of general or injected local anesthetic of any nature in connection with a dental operation.

* * *

2.2    The above violation provides grounds for imposing sanctions under RCW 18.130.160.

//

//

//

//

//

//

STATEMENT OF CHARGES
Docket No. 06-01-A-1051DE

PAGE 2 OF 3
SOC – REV. 10-06

## Section 3: NOTICE TO RESPONDENT

The charges in this document affect the public health, safety and welfare. The Health Services Consultant of the Commission directs that a notice be issued and served on Respondent as provided by law, giving Respondent the opportunity to defend against these charges. If Respondent fails to defend against these charges, Respondent shall be subject to discipline pursuant to RCW 18.130.180 and the imposition of sanctions under RCW 18.130.160.

DATED: _May 15th_____, 2006.

STATE OF WASHINGTON
DEPARTMENT OF HEALTH
DENTAL QUALITY ASSURANCE
COMMISSION

JOSH SHIPE
HEALTH SERVICES CONSULTANT

CINDY C. GIDEON , WSBA # 28365
ASSISTANT ATTORNEY GENERAL

FOR INTERNAL USE ONLY: _____  PROGRAM NO. 2005-06-0019DE

EXHIBIT 4

CLOSED, JURYDEMAND, PROTO

# U.S. District Court
## United States District Court for the Western District of Washington (Tacoma)
### CIVIL DOCKET FOR CASE #: 3:06-cv-05335-RJB

Forshey v. SOMS, Inc et al                          Date Filed: 06/15/2006
Assigned to: Judge Robert J. Bryan                  Date Terminated: 11/06/2007
Cause: 28:1331 Fed. Question: Employment Discrimination   Jury Demand: Both
                                                    Nature of Suit: 442 Civil Rights: Jobs
                                                    Jurisdiction: Federal Question

**Plaintiff**

**Dr. Jennifer Forshey**            represented by   **Sharon M McConnell**
*DMD, MD*                                            TELLER AND ASSOCIATES PLLC
                                                     1139 34TH AVENUE STE B
                                                     SEATTLE , WA 98122
                                                     206-324-8969
                                                     Email: sharon@stellerlaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Stephen A Teller**
                                                     TELLER AND ASSOCIATES PLLC
                                                     1139 34TH AVENUE STE B
                                                     SEATTLE , WA 98122
                                                     206-324-8969
                                                     Fax: 860 3172
                                                     Email: steve@stellerlaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SOMS Inc PS**                     represented by   **James Benjamin Meade , II**
*a Washington corporation*                           FORSBERG & UMLAUF (TAC)
                                                     705 S NINTH ST STE 302
                                                     TACOMA , WA 98405
                                                     206-689-8500
                                                     Email: jmeade@forsberg-umlauf.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Elizabeth Anne Cameron Thompson**
                                                     FORSBERG & UMLAUF (TAC)

705 S NINTH ST STE 302
TACOMA , WA 98405
253-572-4200
Email: ethompson@forsberg-umlauf.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Todd Erickson**                    represented by **James Benjamin Meade , II**
*DDS*                                                       (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Elizabeth Anne Cameron Thompson**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Anne Erickson**                           represented by **James Benjamin Meade , II**
*and their marital community*                               (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Elizabeth Anne Cameron Thompson**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Intermountain Employment
Solutions Inc**
*a Utah corporation*
*TERMINATED: 11/14/2006*
*doing business as*
Ascend HR Solutions
*TERMINATED: 11/14/2006*

**Objector**

**State of Washington, Department of
Health**

**Counter Claimant**

**SOMS Inc PS**                             represented by **Elizabeth Anne Cameron Thompson**
*a Washington corporation*                                  (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **James Benjamin Meade , II**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Robert Todd Erickson**                    represented by    **Elizabeth Anne Cameron Thompson**
*DDS*                                                          (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **James Benjamin Meade , II**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Anne Erickson**                            represented by    **Elizabeth Anne Cameron Thompson**
*and their marital community*                                 (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **James Benjamin Meade , II**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Dr. Jennifer Forshey**                     represented by    **Sharon M McConnell**
*DMD, MD*                                                     (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Stephen A Teller**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2006 | 1 | COMPLAINT against defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, Intermountain Employment Solutions Inc (Receipt # T418), filed by Jennifer Forshey. (Attachments: # 1 Civil Cover Sheet; # 2 Transmittal email. )(JL) (Entered: 06/15/2006) |
| 06/15/2006 | 2 | ORDER REGARDING DISCOVERY AND DEPOSITIONS. Authorized by Judge Robert J. Bryan. (JL) (Entered: 06/15/2006) |
| 06/15/2006 | 3 | ORDER REGARDING INITIAL DISCLOSURES, JOINT STATUS REPORT AND EARLY SETTLEMENT. FRCP 26f Conference Deadline is 8/30/2006; Initial Disclosure Deadline is 9/6/2006; Joint Status Report due by 9/13/2006. Authorized by Judge Robert J. Bryan. (JL) (Entered: 06/15/2006) |

| 06/15/2006 | | JSR due 9/13/2006. (JL) (Entered: 06/15/2006) |
|---|---|---|
| 06/15/2006 | 4 | PRAECIPE TO ISSUE SUMMONS - (issd) re 1 Complaint,. (DK, ) (Entered: 06/21/2006) |
| 06/21/2006 | 5 | NOTICE of Appearance by attorney James Benjamin Meade, II on behalf of Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson (Meade, James) (Entered: 06/21/2006) |
| 06/23/2006 | 6 | **DECLARATION OF SERVICE** ACKNOWLEDGEMENT OF SERVICE of summons and complaint on 6/21/06 upon James Meade (PL, )/ Clerk Modified on 6/27/2006 - changed acknowledgement to declaration of service. (PL, ). (Entered: 06/23/2006) |
| 06/23/2006 | | NOTICE of Docket Text Modification re 6 Acknowledgment of Service: Clerk Changed Acknowledgemt to Declaration of service. (PL, ) (Entered: 06/27/2006) |
| 06/26/2006 | 7 | ANSWER to Complaint with JURY DEMAND, COUNTERCLAIM against plaintiff Jennifer Forshey by Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson.(Meade, James) (Entered: 06/26/2006) |
| 07/05/2006 | 8 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA upon State of WA, Dept of Health, Dental Quality Assurance Commission served on 6/29/06, filed by Defendants (CAR, ) (Entered: 07/05/2006) |
| 07/06/2006 | 9 | MOTION to Quash *Subpoenas and for Protective Order* by Plaintiff Jennifer Forshey. Noting Date 7/17/2006. (Teller, Stephen) (Entered: 07/06/2006) |
| 07/06/2006 | 10 | DECLARATION of Stephen Teller, Counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 9 MOTION to Quash *Subpoenas and for Protective Order* (Teller, Stephen) (Entered: 07/06/2006) |
| 07/06/2006 | 11 | PROPOSED ORDER (Unsigned) re 9 MOTION to Quash *Subpoenas and for Protective Order* (Teller, Stephen) (Entered: 07/06/2006) |
| 07/07/2006 | 12 | CORPORATE DISCLOSURE STATEMENT filed pursuant to FRCP 7.1 by Defendant Sound Oral and Maxillofacial Surgery PS.(Meade, James) (Entered: 07/07/2006) |
| 07/07/2006 | 13 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon American Association of Oral & Maxillofacial Surgeons served on 06/29/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/07/2006) |
| 07/07/2006 | 14 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon American Dental Association served on 06/29/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/07/2006) |
| 07/07/2006 | 15 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon American Medical Association served on 06/29/06, filed by Counter |

| | | |
|---|---|---|
| | | Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/07/2006) |
| 07/07/2006 | 16 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon O.M.S.N.I.C. served on 06/29/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/07/2006) |
| 07/09/2006 | 17 | *Plaintiff Jennifer Forshey's* ANSWER to Counterclaim *and Affirmative Defenses* by Jennifer Forshey.(Teller, Stephen) (Entered: 07/09/2006) |
| 07/10/2006 | 18 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon American Heat Association served on 7/5/06, filed by Defendant Sound Oral and Maxillofacial Surgery PS. (Meade, James) (Entered: 07/10/2006) |
| 07/12/2006 | 19 | RESPONSE, by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, to 9 MOTION to Quash *Subpoenas and for Protective Order*. (Meade, James) (Entered: 07/12/2006) |
| 07/12/2006 | 20 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 9 MOTION to Quash *Subpoenas and for Protective Order* (Attachments: # 1 Exhibit 1-3# 2 Exhibit 4-6# 3 Exhibit 7-9# 4 Exhibit 10-13)(Meade, James) (Entered: 07/12/2006) |
| 07/13/2006 | 21 | *Department of Health's and Dental Quality Assurance Commission's Objection to Subpoena* BRIEF. (Adix, Sandra) (Entered: 07/13/2006) |
| 07/13/2006 | 22 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *FOR VIDEO DEPOSITION* upon Jennifer Forshey served on July 13, 2006, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/13/2006) |
| 07/14/2006 | 23 | **INCORRECT IMAGE ATTACHED, see 24 for correction:** AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon Massachusetts General Hospital served on 7/6/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) Modified on 7/14/2006 (KN, ). (Entered: 07/14/2006) |
| 07/14/2006 | 24 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon Massachusetts General Hospital served on 7/6/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/14/2006) |
| 07/14/2006 | | NOTICE of Docket Text Modification re 23 Affidavit of Service of Deposition Subpoena, : Incorrect document filed, see 24 for correction (KN, ) (Entered: 07/14/2006) |

| 07/17/2006 | 25 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 9 MOTION to Quash *Subpoenas and for Protective Order* (Teller, Stephen) (Entered: 07/17/2006) |
|---|---|---|
| 07/17/2006 | 26 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for records* upon New Jersey State Board of Dentistry served on 7/11/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/17/2006) |
| 07/17/2006 | 27 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for Records* upon Barry Elbaum served on 7/13/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 07/17/2006) |
| 07/19/2006 | 28 | ORDER granting 9 Motion to Quash. Signed by Judge Robert J. Bryan.(JL) (Entered: 07/19/2006) |
| 08/03/2006 | 29 | JOINT STATUS REPORT *and Discovery Plan* filed by all parties. Est. Trial Days: 10-14. (McConnell, Sharon) (Entered: 08/03/2006) |
| 08/07/2006 | 30 | MINUTE ORDER SETTING TRIAL, PRETRIAL DATES AND ORDERING MEDIATION; Length of Trial: *14 DAYS*. Jury Trial is set for 9/10/2007 at 09:30 AM in A Courtroom before Hon. Robert J. Bryan. Joinder of Parties due by 9/6/2006; Expert Witness Disclosure/Reports under FRCP 26(a)(2) due by 3/14/2007; Motions due by 4/23/2007; Discovery completed by 5/14/2007; Dispositive motions due by 6/12/2007; Settlement conference to be held by 7/12/2007; 39.1 mediation to be completed by 8/13/2007; 39.1 Settlement Report due by 8/20/2007; Motions in Limine due by 8/13/2007; Pretrial Order due by 8/24/2007; Pretrial Conference set for 8/31/2007 at 08:30 AM before Hon. Robert J. Bryan. Trial briefs to be submitted by 8/31/2007; Proposed voir dire/jury instructions due by 8/31/2007. by authorization of Judge Robert J. Bryan. (DK, ) (Entered: 08/07/2006) |
| 08/18/2006 | 31 | INITIAL DISCLOSURES by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson.(Meade, James) (Entered: 08/18/2006) |
| 09/21/2006 | 32 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *For Records* upon Dr. Stephen Sudbrink served on 9/7/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 09/21/2006) |
| 09/21/2006 | 33 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA *for Records* upon Dr. Stanley Pollock served on 9/5/06, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 09/21/2006) |
| 09/28/2006 | 34 | MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound |

| | | |
|---|---|---|
| | | Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. Noting Date 10/6/2006. (Attachments: # 1 Proposed Order Granting Motion to Compel Production from Nonparty Dr. Steven D. Sudbrink)(Meade, James) (Entered: 09/28/2006) |
| 09/28/2006 | 35 | DECLARATION of Elizabeth Thompson filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* (Attachments: # 1 Exhibit B# 2 Exhibit C# 3 Exhibit D# 4 Exhibit E-J)(Meade, James) (Entered: 09/28/2006) |
| 09/28/2006 | 36 | DECLARATION of Anne Erickson filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* (Meade, James) (Entered: 09/28/2006) |
| 10/02/2006 | 37 | MINUTE ORDER: On 9/28/06, counsel filed a motion to compel production, Dkt #34. This motion was incorrectly noted for the Court's 10/06/06 motion calendar. Pursuant to Local Rule CR 7(d)(2), this motion is RE-NOTED for 10/13/06. Parties shall respond to the motion in accordance with the Local Rules. 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* filed by Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, Noting Date 10/13/2006. (DK, ) (Entered: 10/02/2006) |
| 10/05/2006 | 43 | AFFIDAVIT OF SERVICE OF SUBPOENA upon Crawford Katica Inc served on 9/28/06. (DK, ) (Entered: 10/18/2006) |
| 10/09/2006 | 38 | RESPONSE, by Plaintiff Jennifer Forshey, to 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink.* (Teller, Stephen) (Entered: 10/09/2006) |
| 10/11/2006 | 39 | REPLY, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, TO RESPONSE to 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* (Meade, James) (Entered: 10/11/2006) |
| 10/11/2006 | 40 | DECLARATION of Anne Erickson filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* (Meade, James) (Entered: 10/11/2006) |
| 10/11/2006 | 41 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 34 MOTION to Compel *Production from Nonparty Dr. Steven D. Sudbrink* (Meade, James) (Entered: 10/11/2006) |
| 10/16/2006 | 42 | ORDER DENYING WITHOUT PREJUDICE DEFENDANTS SOUND ORAL& MAXILLOFACIAL SURGERY, P.S., ROBERT TODD |

| | | |
|---|---|---|
| | | ERICKSON, DDS, AND ANNE ERICKSON'S MOTION TO COMPEL PRODUCTION FROM NONPARTY 34 Motion to Compel by Judge Robert J. Bryan.(DK, ) (Entered: 10/16/2006) |
| 11/13/2006 | 44 | Stipulated MOTION *to Dismiss Ascend HR* by Plaintiff Jennifer Forshey. Noting Date 11/13/2006. (McConnell, Sharon) (Entered: 11/13/2006) |
| 11/14/2006 | 45 | ORDER DISMISSING DEFENDANT INTERMOUNTAIN EMPLOYMENT SOLUTIONS, INC. d.b.a. ASCEND, granting 44 . It is hereby ORDERED that all claims against defendant Intermountain Employment Solutions, Inc., dba Ascend HR are DISMISSED WITH PREJUDICE and without costs.Signed by Judge Robert J. Bryan.(JL) (Entered: 11/14/2006) |
| 11/21/2006 | 46 | NOTICE by Plaintiff Jennifer Forshey *of Discovery Order from Eastern District of Pennsylvania* (McConnell, Sharon) (Entered: 11/21/2006) |
| 12/01/2006 | 47 | MOTION for Protective Order *Entry of Stipulated* by Counter Claimants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. Noting Date 12/6/2006. (Attachments: # 1 Proposed Order)(Meade, James) (Entered: 12/01/2006) |
| 12/01/2006 | 48 | DECLARATION of Elizabeth Thompson filed by Counter Claimants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 47 MOTION for Protective Order *Entry of Stipulated* (Meade, James) (Entered: 12/01/2006) |
| 12/06/2006 | 49 | ORDER GRANTING MOTION FOR ENTRY OF STIPULATED PROTECTIVE ORDER, granting 47 Motion for Protective Order. Signed by Judge Robert J. Bryan.(JL) (Entered: 12/06/2006) |
| 12/06/2006 | 50 | STIPULATED PROTECTIVE ORDER. Signed by Judge Robert J. Bryan. (JL) (Entered: 12/06/2006) |
| 12/07/2006 | 51 | NOTICE of Corrected Image/Document re 50 Stipulated Protective Order. (Service of corrected image is attached). (JL) (Entered: 12/07/2006) |
| 12/14/2006 | 52 | AFFIDAVIT OF SERVICE OF UBPOENA upon WAMU - Records Custodian served on 12/11/06. (DK, ) (Entered: 12/18/2006) |
| 12/20/2006 | 53 | AFFIDAVIT OF SERVICE OF SUBPOENA upon WA State Employment Security served on 12/15/06. (DK, ) (Entered: 12/21/2006) |
| 12/22/2006 | 54 | MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer* by Plaintiff Jennifer Forshey. Noting Date 1/4/2007. (Attachments: # 1 Proposed Order Granting Protection from Harassment in Plaintiff's Workplace)(Teller, Stephen) (Entered: 12/22/2006) |
| 12/22/2006 | 55 | DECLARATION of Counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer* (Teller, Stephen) (Entered: 12/22/2006) |
| 12/22/2006 | 56 | MOTION to Quash *Subpoena for Psychological Records* by Plaintiff Jennifer |

Case 3:08-cv-05745-BHS   Document 23-2   Filed 04/12/10   Page 85 of 105

| | | |
|---|---|---|
| | | Forshey. Noting Date 1/4/2007. (Attachments: # 1 Proposed Order Granting Motion to Quash Subpoena)(Teller, Stephen) (Entered: 12/22/2006) |
| 12/22/2006 | 57 | DECLARATION of Plaintiff filed by Plaintiff Jennifer Forshey re 56 MOTION to Quash *Subpoena for Psychological Records* (Teller, Stephen) (Entered: 12/22/2006) |
| 12/22/2006 | 58 | DECLARATION of Counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 56 MOTION to Quash *Subpoena for Psychological Records* (Teller, Stephen) (Entered: 12/22/2006) |
| 12/23/2006 | 59 | MEMORANDUM filed by Plaintiff Jennifer Forshey re 56 MOTION to Quash *Subpoena for Psychological Records Correcting Date Error on Page 3 of Motion* (Teller, Stephen) (Entered: 12/23/2006) |
| 12/23/2006 | 60 | MEMORANDUM filed by Plaintiff Jennifer Forshey re 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer Correcting Date Error on Page 2* (Teller, Stephen) (Entered: 12/23/2006) |
| 12/29/2006 | 61 | DECLARATION of James B. Meade filed by Defendant Sound Oral and Maxillofacial Surgery PS re 56 MOTION to Quash *Subpoena for Psychological Records* (Attachments: # 1 Exhibit 1# 2 Exhibit 2-10# 3 Exhibit 11-15)(Meade, James) (Entered: 12/29/2006) |
| 12/30/2006 | 62 | RESPONSE, by Defendant Sound Oral and Maxillofacial Surgery PS, to 56 MOTION to Quash *Subpoena for Psychological Records*. (Meade, James) (Entered: 12/30/2006) |
| 12/30/2006 | 63 | RESPONSE, by Defendant Sound Oral and Maxillofacial Surgery PS, to 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer*. (Meade, James) (Entered: 12/30/2006) |
| 12/30/2006 | 64 | DECLARATION of Robert Todd Erickson filed by Defendant Robert Todd Erickson re 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer* (Meade, James) (Entered: 12/30/2006) |
| 12/30/2006 | 65 | DECLARATION of Anne Erickson filed by Defendant Anne Erickson re 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer* (Meade, James) (Entered: 12/30/2006) |
| 01/02/2007 | 66 | Supplemental DECLARATION of James B. Meade in Opposition to Motion to Quash Subpoena for Recent Psychological Treatment Records filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 56 MOTION to Quash *Subpoena for Psychological Records* (Meade, James) (Entered: 01/02/2007) |
| 01/04/2007 | 67 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 54 MOTION for Protective Order *Barring Contact Between Defendants and Plaintiff's Employer* (Teller, Stephen) (Entered: 01/04/2007) |
| 01/04/2007 | 68 | DECLARATION of Sharon McConnell, Counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 54 MOTION for Protective Order *Barring* |

| | | *Contact Between Defendants and Plaintiff's Employer* (Attachments: # 1 Exhibit 1 (Redacted OMSNIC Document)# 2 Exhibit 2 (Correspondence between counsel)# 3 Exhibit 3 (Defendants' Amended Witness List)# 4 Exhibit 4 (Excerpt from Sudbrink Deposition))(Teller, Stephen) (Entered: 01/04/2007) |
|---|---|---|
| 01/04/2007 | 69 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 56 MOTION to Quash *Subpoena for Psychological Records* (Attachments: # 1 Exhibit Excerpts of Deposition of Kim Innocent)(Teller, Stephen) (Entered: 01/04/2007) |
| 01/08/2007 | 70 | ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTION FROM HARASSMENT IN HER WORKPLACE BY DEFENDANT, granting 54 . Signed by Judge Robert J. Bryan.(JL) (Entered: 01/08/2007) |
| 01/08/2007 | 71 | ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO QUASH SUBPOENA FOR RECENT PSYCHOLOGICAL TREATMENT RECORDS, denying 56 Motion to Quash. Signed by Judge Robert J. Bryan. (JL) (Entered: 01/08/2007) |
| 03/15/2007 | 72 | Agreed MOTION and Proposed Order for Extension of Time to Complete Discovery by Plaintiff Jennifer Forshey. Noting Date 3/16/2007.(McConnell, Sharon) Modified/Added 'Proposed Order' on 3/16/2007 (ECS, ). (Entered: 03/15/2007) |
| 03/16/2007 | 73 | STIPULATED MOTION TO EXTEND DISCOVERY MOTION DEADLINE AND DISCOVERY CUTOFF. The Discovery Motion deadline is extended to 5/14/07 and the Discovery cutoff is extended to 5/29/07. Signed by Judge Robert J. Bryan. (JL) (Entered: 03/19/2007) |
| 03/16/2007 | | Set/Reset Deadlines per Dkt #73: Discovery Motions due by 5/14/2007 (DK, ) (Entered: 03/28/2007) |
| 04/05/2007 | 74 | MOTION for Protective Order *Stipulated* by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. Noting Date 4/6/2007.(Meade, James) (Entered: 04/05/2007) |
| 04/10/2007 | 75 | MOTION for Protective Order by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. (Attachments: # 1 Proposed Order)Noting Date 4/17/2007.(Meade, James) (Entered: 04/10/2007) |
| 04/10/2007 | 76 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 75 MOTION for Protective Order (Meade, James) (Entered: 04/10/2007) |
| 04/12/2007 | 77 | RESPONSE, by Plaintiff Jennifer Forshey, to 75 MOTION for Protective Order. (Attachments: # 1)(Teller, Stephen) (Entered: 04/12/2007) |
| 04/17/2007 | 78 | REPLY, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, TO RESPONSE to 75 MOTION for Protective Order (Meade, |

| | | James) (Entered: 04/17/2007) |
|---|---|---|
| 04/19/2007 | 79 | ORDER DENYING WITHOUT PREJUDICE DEFENDANTS SOUND ORAL & MAXILLOFACIAL SURGERY, P.S., ROBERT TODD ERICKSON, DDS, AND ANNE ERICKSON'S MOTION FOR A PROTECTION ORDER, denying 75 . It is hereby ORDERED that Defendants Sound Oral & Maxillofacial Surgery, P.S., Robert Todd Erickson, DDS, and Anne Erickson's Motion for a Protection Order (Dkt. 75 ) is DENIED without prejudice. Signed by Judge Robert J. Bryan.(JL) (Entered: 04/19/2007) |
| 04/24/2007 | 80 | Second MOTION for Protective Order *stipulated* by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Robert Todd Erickson, Anne Erickson. Noting Date 4/25/2007.(Meade, James) (Entered: 04/24/2007) |
| 04/24/2007 | 81 | Stipulated MOTION *for Protective Order* by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. Noting Date 4/25/2007.(Meade, James) (Entered: 04/24/2007) |
| 04/27/2007 | 82 | MOTION for Protective Order *For Ericksons Depositions* by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson. Noting Date 5/4/2007.(Meade, James) (Entered: 04/27/2007) |
| 04/27/2007 | 83 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 82 MOTION for Protective Order *For Ericksons Depositions* (Attachments: # 1 Exhibit 1-3# 2 Exhibit 4-7# 3 Exhibit 8-11# 4 Exhibit 12-16)(Meade, James) (Entered: 04/27/2007) |
| 04/30/2007 | 84 | MINUTE ORDER: The parties have informed the court that Dkt. 74, 80, and 81 should be stricken, and that the Stipulated Protective Order entered on December 7, 2006 (Dkt. 51) remains in effect. It is so ORDERED. 74 MOTION for Protective Order *Stipulated* filed by Sound Oral and Maxillofacial Surgery PS, Anne Erickson, Robert Todd Erickson, 80 Second MOTION for Protective Order *stipulated* filed by Anne Erickson, Robert Todd Erickson, 81 Stipulated MOTION *for Protective Order* filed by Sound Oral and Maxillofacial Surgery PS, Anne Erickson, Robert Todd Erickson (DK ) (Entered: 04/30/2007) |
| 05/01/2007 | 85 | RESPONSE, by Plaintiff Jennifer Forshey, to 82 MOTION for Protective Order *For Ericksons Depositions*. (Teller, Stephen) (Entered: 05/01/2007) |
| 05/02/2007 | 86 | DECLARATION of Cindy Gideon, AAG filed by Plaintiff Jennifer Forshey re 82 MOTION for Protective Order *For Ericksons Depositions* (Teller, Stephen) (Entered: 05/02/2007) |
| 05/04/2007 | 87 | REPLY, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson, TO RESPONSE to 82 MOTION for Protective Order *For Ericksons Depositions* (Meade, James) (Entered: 05/04/2007) |
| | | |

| | | |
|---|---|---|
| 05/04/2007 | 88 | Supplemental DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 82 MOTION for Protective Order *For Ericksons Depositions* (Attachments: # 1 Exhibit 1-4# 2 Exhibit 5-7# 3 Exhibit 8-13)(Meade, James) (Entered: 05/04/2007) |
| 05/04/2007 | 89 | DECLARATION of Vanessa Vanderbrug filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants Sound Oral and Maxillofacial Surgery PS, Robert Todd Erickson, Anne Erickson re 82 MOTION for Protective Order *For Ericksons Depositions* (Meade, James) (Entered: 05/04/2007) |
| 05/07/2007 | 90 | ORDER DENYING DEFENDANTS' MOTION FOR PROTECTION ORDER FOR ERICKSONS MAY 7TH AND 8TH DEPOSITIONS re 82 Motion for Protective Order by Judge Robert J. Bryan.(DK) (Entered: 05/07/2007) |
| 06/08/2007 | 91 | AFFIDAVIT OF SERVICE OF DEPOSITION SUBPOENA upon Angela Ornburn served on 5/31/07. (DK) (Entered: 06/08/2007) |
| 06/12/2007 | 92 | MOTION for Summary Judgment *on Contract Claims* by Plaintiff Jennifer Forshey. (Attachments: # 1 Proposed Order Granting Summary Judgment on Contract Claims)Noting Date 7/6/2007.(Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 93 | MOTION for Summary Judgment *on Counterclaims* by Counter Defendant Jennifer Forshey. (Attachments: # 1 Proposed Order Granting Summary Judgment on Counterclaims)Noting Date 7/6/2007.(Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 94 | DECLARATION of Stephen Teller in Support of Summary Judgment on Contract and Counterclaims filed by Plaintiff Jennifer Forshey re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 95 | EXHIBIT *A* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 96 | EXHIBIT *B* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 97 | EXHIBIT *C* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 98 | EXHIBIT *E* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 99 | EXHIBIT *F* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 100 | EXHIBIT *G* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |

| 06/12/2007 | 101 | EXHIBIT *H* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 102 | EXHIBIT *I* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 103 | EXHIBIT *J* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 104 | EXHIBIT *K* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 105 | EXHIBIT *L* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 106 | EXHIBIT *M* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 107 | EXHIBIT *N* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 108 | EXHIBIT *O* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 109 | EXHIBIT *P* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 110 | EXHIBIT *Q* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 111 | EXHIBIT *R* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 112 | EXHIBIT *S* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 113 | EXHIBIT *T* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 114 | EXHIBIT *U* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 115 | EXHIBIT *V* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 116 | EXHIBIT *W* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 117 | EXHIBIT *X* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 118 | EXHIBIT *Y* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 119 | EXHIBIT *Z* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |

| 06/12/2007 | 120 | EXHIBIT *AA* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 121 | EXHIBIT *BB* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 122 | EXHIBIT *CC* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 123 | EXHIBIT *DD* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 124 | EXHIBIT *EE* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 125 | EXHIBIT *FF* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 126 | EXHIBIT *GG* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 127 | EXHIBIT *HH* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 128 | EXHIBIT *II* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 129 | EXHIBIT *JJ* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 130 | EXHIBIT *KK* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 131 | EXHIBIT *LL* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 132 | EXHIBIT *MM* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 133 | EXHIBIT *NN* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 134 | EXHIBIT *OO* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 135 | EXHIBIT *PP* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 136 | EXHIBIT *QQ* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 137 | EXHIBIT *RR (Plaintiff Declaration)* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 138 | EXHIBIT *UU* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |

| | | |
|---|---|---|
| 06/12/2007 | 139 | EXHIBIT *VV* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 140 | EXHIBIT *WW* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 141 | EXHIBIT *XX* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 142 | EXHIBIT *YY* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 143 | EXHIBIT *ZZ* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 144 | EXHIBIT *AAA* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 145 | EXHIBIT *TT (T.Erickson Depo. Excerpts)* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 146 | EXHIBIT *SS (A.Ericson Depo. Excerpts)* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/12/2007 | 147 | EXHIBIT *D (CRM Report)* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/12/2007) |
| 06/13/2007 | 148 | EXHIBIT *\* (14 letters)* re 94 Declaration, by Plaintiff Jennifer Forshey. (Teller, Stephen) (Entered: 06/13/2007) |
| 06/22/2007 | 149 | Stipulated MOTION *to amend caption* by Plaintiff Jennifer Forshey. Noting Date 6/22/2007.(McConnell, Sharon) (Entered: 06/22/2007) |
| 06/27/2007 | 150 | STIPULATED MOTION TO AMEND CAPTION. Defendants now designated as: SOMS, Inc., P.S., a Washington corporation; ROBERT TODD ERICKSON, DDS, and ANNE ERICKSON, and their marital community. Signed by Judge Robert J. Bryan. (JL) (Entered: 06/27/2007) |
| 07/02/2007 | 151 | RESPONSE, by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, to 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims*. (Meade, James) (Entered: 07/02/2007) |
| 07/02/2007 | 152 | DECLARATION of James B. Meade filed by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Attachments: # 1 Exhibit 1-4# 2 Exhibit 5-13# 3 Exhibit 14-18# 4 Exhibit 19-25# 5 Exhibit 26# 6 Exhibit 27-29# 7 Exhibit 30# 8 Exhibit 31-33)(Meade, James) (Entered: 07/02/2007) |
| 07/02/2007 | 153 | DECLARATION of Elizabeth Thompson filed by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 93 MOTION for Summary |

| | | |
|---|---|---|
| | | *Judgment on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Meade, James) (Entered: 07/02/2007) |
| 07/02/2007 | 154 | DECLARATION of Robert Todd Erickson filed by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Meade, James) (Entered: 07/02/2007) |
| 07/02/2007 | 155 | DECLARATION of Anne Erickson filed by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Meade, James) (Entered: 07/02/2007) |
| 07/02/2007 | 156 | DECLARATION of Janis Galusha filed by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Meade, James) (Entered: 07/02/2007) |
| 07/06/2007 | 157 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 93 MOTION for Summary Judgment *on Counterclaims* (McConnell, Sharon) (Entered: 07/06/2007) |
| 07/06/2007 | 158 | DECLARATION of Sharon McConnell filed by Plaintiff Jennifer Forshey re 93 MOTION for Summary Judgment *on Counterclaims*, 92 MOTION for Summary Judgment *on Contract Claims* (Attachments: # 1 Exhibit Exhibit BBB, new WW, Parisio# 2 Exhibit Exhibit CCC, Erickson Depo 156-157# 3 Exhibit Exhibit DDD, Ornburn Depo 68-70)(McConnell, Sharon) (Entered: 07/06/2007) |
| 07/06/2007 | 159 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 92 MOTION for Summary Judgment *on Contract Claims* (Attachments: # 1 Proposed Order Granting Summary Judgment)(McConnell, Sharon) (Entered: 07/06/2007) |
| 07/24/2007 | 160 | ORDER (1) GRANTING IN PART AND DENYING IN PART Pltf's Motion for Summary Judgment on Contract Claims, (2) GRANTING IN PART AND DENYING IN PART Pltf's Motion for Summary Judgment on Counterclaims, and (3) GRANTING AND DENYING Evidentiary Motions to Strike: Pltfs Motion for Summary Judgment on Contract Claims (Dkt. 92) is GRANTED only as to the bonus compensation and double damages owed to Dr. Forshey under the Associate Agreement and is otherwise DENIED; Dr. Forshey is entitled to judgment in the amount of $6,295.29; Pltf's Motion for Summary Judgment on Counterclaims (Dkt. 93) is GRANTED as to the counterclaim for tortious interference with business expectancies and GRANTED in part and DENIED in part as to the counterclaim for breach of contract, as provided herein; pltfs Evidentiary Motions to Strike contained in the reply (Dkt. 159) are GRANTED and DENIED as provided herein, signed by Judge Robert J. Bryan.(DK) (Entered: 07/24/2007) |
| 07/24/2007 | 161 | ORDER AMENDING ORDER re 160 Order on Motion for Summary Judgment, signed by Judge Robert J. Bryan. (DK) (Entered: 07/24/2007) |

| 07/27/2007 | 162 | MOTION for Reconsideration re 160 Order on Motion for Summary Judgment,,,,,,, by Plaintiff Jennifer Forshey. Oral Argument Requested.Noting Date 7/27/2007.(Teller, Stephen) (Entered: 07/27/2007) |
| 08/01/2007 | 163 | MOTION for Reconsideration by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson. Noting Date 8/1/2007.(Meade, James) (Entered: 08/01/2007) |
| 08/03/2007 | 164 | ORDER ON MOTIONS FOR RECONSIDERATION, denying 162 Motion for Reconsideration and renoting 163 MOTION for Reconsideration for 8/17/2007. Signed by Judge Robert J. Bryan.(JL) (Entered: 08/03/2007) |
| 08/07/2007 | 165 | MINUTE ENTRY for proceedings held before Judge Robert J. Bryan - Dep Clerk: *D*; Pla Counsel: *S McConnell*; Def Counsel: *E Thompson*; **Telephone Conference** held on 8/7/2007 re: discovery dispute as subpoena/release of telephone records of minor; Court finds insofar as informal motion to quash subpoena - DENIED; motion to compel - DENIED. (DK) (Entered: 08/07/2007) |
| 08/09/2007 | 166 | MINUTE ORDER. On August 9, 2007, the parties requested by telephone that the court revise the pretrial schedule as follows: (1) Plaintiff's Motions in Limine shall be filed not later than August 16, 2007; (2) defendants will provide plaintiff with their pretrial statement on August 9, 2007; and (3) defendants will provide plaintiff with their proposed jury instructions by August 10, 2007. IT IS SO ORDERED. All other pretrial deadlines will remain unchanged. Authorized by Judge Robert J. Bryan. (JL) (Entered: 08/09/2007) |
| 08/10/2007 | 167 | RESPONSE, by Plaintiff Jennifer Forshey, to 163 MOTION for Reconsideration. (Teller, Stephen) (Entered: 08/10/2007) |
| 08/13/2007 | 168 | NOTICE of Rescheduled Hearing: Due to the Court's unavailability on 8/31/07, the Pretrial Conference in this matter is RESCHEDULED for 9/4/2007 at 01:30 PM before Hon. Robert J. Bryan.(DK) (Entered: 08/13/2007) |
| 08/13/2007 | 169 | Proposed MOTIONS IN LIMINE by Defendant SOMS Inc., PS. Noting Date 8/24/2007.(Meade, James) (Entered: 08/13/2007) |
| 08/13/2007 | 170 | DECLARATION of James B. Meade filed by Defendant SOMS Inc., PS re 169 Proposed MOTIONS IN LIMINE (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit)(Meade, James) (Entered: 08/13/2007) |
| 08/16/2007 | 171 | REPLY, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, TO RESPONSE to 163 MOTION for Reconsideration (Meade, James) (Entered: 08/16/2007) |
| 08/16/2007 | 172 | MOTIONS IN LIMINE by Plaintiff Jennifer Forshey. Oral Argument Requested.Noting Date 8/24/2007.(Teller, Stephen) (Entered: 08/16/2007) |
| 08/16/2007 | 173 | MOTIONS IN LIMINE by Plaintiff Jennifer Forshey. Oral Argument Requested.Noting Date 8/24/2007.(McConnell, Sharon) (Entered: 08/16/2007) |

| 08/16/2007 | 174 | DECLARATION of Stephen Teller, counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 172 MOTIONS IN LIMINE (Attachments: # 1 Exhibit A-B# 2 Exhibit E-G# 3 Exhibit H-I# 4 Exhibit J-L# 5 Exhibit M-N# 6 Exhibit O-P# 7 Exhibit Q-S# 8 Exhibit T-V# 9 Exhibit W-BB# 10 Exhibit CC# 11 Exhibit DD-EE# 12 Exhibit FF-HH# 13 Exhibit II-KK# 14 Exhibit LL-OO# 15 Exhibit C# 16 Exhibit D)(Teller, Stephen) (Entered: 08/16/2007) |
| --- | --- | --- |
| 08/17/2007 | 175 | ORDER GRANTING MOTION FOR RECONSIDERATION, granting 163 . It is hereby ORDERED that Defendant SOMS, Inc., P.S., Robert Todd Erickson, DDS, and Anne Ericksons Motion for Reconsideration (Dkt. 163 ) is GRANTED and the Order (Dkt. 160 ) is AMENDED as provided herein.Signed by Judge Robert J. Bryan. (JL) (Entered: 08/17/2007) |
| 08/17/2007 | 176 | DECLARATION of Jennifer Forshey filed by Plaintiff Jennifer Forshey re 172 MOTIONS IN LIMINE (Teller, Stephen) (Entered: 08/17/2007) |
| 08/17/2007 | 177 | DECLARATION of Stephen Teller re Errata - Replacement Exhibit LL filed by Plaintiff Jennifer Forshey re 172 MOTIONS IN LIMINE (Teller, Stephen) (Entered: 08/17/2007) |
| 08/20/2007 | 178 | NOTICE of Compliance with CR 39.1(c)(3) by Counter Claimants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 08/20/2007) |
| 08/20/2007 | 179 | RESPONSE, by Plaintiff Jennifer Forshey, to 169 Proposed MOTIONS IN LIMINE. Oral Argument Requested. (Teller, Stephen) (Entered: 08/20/2007) |
| 08/20/2007 | 180 | DECLARATION of Stephen Teller filed by Plaintiff Jennifer Forshey re 169 Proposed MOTIONS IN LIMINE (Teller, Stephen) (Entered: 08/20/2007) |
| 08/20/2007 | 181 | RESPONSE, by Defendant SOMS Inc., PS, to 172 MOTIONS IN LIMINE. Oral Argument Requested. (Meade, James) (Entered: 08/20/2007) |
| 08/20/2007 | 182 | DECLARATION of James B. Meade filed by Defendant SOMS Inc., PS re 172 MOTIONS IN LIMINE (Attachments: # 1 Declaration In Support of SOMS Response to Dr. Forshey's Motions In Limine# 2 Exhibit # 3 # 4 Exhibit # 5 Exhibit)(Meade, James) (Entered: 08/20/2007) |
| 08/24/2007 | 183 | REPLY, filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, TO RESPONSE to 172 MOTIONS IN LIMINE (Meade, James) (Entered: 08/24/2007) |
| 08/24/2007 | 184 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 172 MOTIONS IN LIMINE (Attachments: # 1 Exhibit 1-4# 2)(Meade, James) (Entered: 08/24/2007) |
| 08/24/2007 | 185 | REPLY, filed by Plaintiff Jennifer Forshey, TO RESPONSE to 172 MOTIONS IN LIMINE (McConnell, Sharon) (Entered: 08/24/2007) |
| 08/24/2007 | 186 | DECLARATION of Sharon McConnell filed by Plaintiff Jennifer Forshey re 172 MOTIONS IN LIMINE (McConnell, Sharon) (Entered: 08/24/2007) |

| 08/27/2007 | 187 | MOTION for Relief *from Deadline to file Supplemental Motions in Limine* by Plaintiff Jennifer Forshey. (Attachments: # 1 Proposed Order)Noting Date 9/5/2007.(Teller, Stephen) Modified on 8/28/2007 (ECS, ). (Entered: 08/27/2007) |
| --- | --- | --- |
| 08/27/2007 | 188 | Supplemental MOTIONS IN LIMINE by Plaintiff Jennifer Forshey. Oral Argument Requested. (Attachments: # 1 Proposed Order on Plaintiff's Supplemental Motions in Limine)Noting Date 9/10/2007.(Teller, Stephen) (Entered: 08/27/2007) |
| 08/27/2007 | 189 | DECLARATION of Stephen Teller, Counsel for Plaintiff filed by Plaintiff Jennifer Forshey re 188 Supplemental MOTIONS IN LIMINE (Attachments: # 1 Exhibits A-J# 2 Exhibits K-Q# 3 Exhibit R, Part 1# 4 Exhibit R, Part 2# 5 Exhibits S and T)(Teller, Stephen) Modified on 8/28/2007 (ECS, ). (Entered: 08/27/2007) |
| 08/27/2007 | 190 | DESIGNATION OF DEPOSITION TRANSCRIPT Filed by Plaintiff Jennifer Forshey.(Teller, Stephen) (Entered: 08/27/2007) |
| 08/28/2007 | 191 | **Duplicate filing, see doc # 194** Proposed Pretrial Order by Plaintiff Jennifer Forshey. (Teller, Stephen) Modified on 8/30/2007 (ECS, ). (Entered: 08/28/2007) |
| 08/28/2007 | 192 | DESIGNATION OF DEPOSITION TRANSCRIPT Filed by Plaintiff Jennifer Forshey.(Teller, Stephen) (Entered: 08/28/2007) |
| 08/28/2007 | 193 | DESIGNATION OF DEPOSITION TRANSCRIPT Filed by Plaintiff Jennifer Forshey.(Teller, Stephen) (Entered: 08/28/2007) |
| 08/29/2007 | 194 | Proposed Pretrial Order by Plaintiff Jennifer Forshey. (Attachments: # 1 Plaintiff's Exhibit List with Defendants' Objections# 2 Defendants' Exhibit list with Plaintiff's Stipulations)(Teller, Stephen) (Entered: 08/29/2007) |
| 08/30/2007 | 195 | DESIGNATION OF DEPOSITION TRANSCRIPT Filed by Plaintiff Jennifer Forshey.(McConnell, Sharon) (Entered: 08/30/2007) |
| 08/31/2007 | 196 | Proposed Voir Dire by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson. (Meade, James) (Entered: 08/31/2007) |
| 08/31/2007 | 197 | TRIAL BRIEF by Defendant SOMS Inc., PS. (Meade, James) (Entered: 08/31/2007) |
| 08/31/2007 | 198 | Proposed Voir Dire by Plaintiff Jennifer Forshey. (McConnell, Sharon) (Entered: 08/31/2007) |
| 08/31/2007 | 199 | Proposed Jury Instructions by Plaintiff Jennifer Forshey *Disputed Instructions* (McConnell, Sharon) (Entered: 08/31/2007) |
| 08/31/2007 | 200 | TRIAL BRIEF by Plaintiff Jennifer Forshey. (McConnell, Sharon) (Entered: 08/31/2007) |
| 08/31/2007 | 201 | Proposed Jury Instructions by Plaintiff Jennifer Forshey *Joint Instructions* (McConnell, Sharon) (Entered: 08/31/2007) |

Case 3:08-cv-05745-BHS   Document 23-2   Filed 04/12/10   Page 96 of 105

| | | |
|---|---|---|
| 09/04/2007 | 202 | RESPONSE, by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson, to 187 MOTION for Relief *from Deadline to file Supplemental Motions in Limine*. (Meade, James) (Entered: 09/04/2007) |
| 09/04/2007 | 203 | DECLARATION of James B. Meade filed by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc., PS, Robert Todd Erickson, Anne Erickson re 187 MOTION for Relief *from Deadline to file Supplemental Motions in Limine* (Attachments: # 1 Exhibit 1-2# 2 Exhibit 3-5)(Meade, James) (Entered: 09/04/2007) |
| 09/04/2007 | 204 | Witness List by Plaintiff Jennifer Forshey. (McConnell, Sharon) (Entered: 09/04/2007) |
| 09/04/2007 | 205 | MINUTE ENTRY for proceedings held before Judge Robert J. Bryan - Dep Clerk: *D Kaleel*; Pla Counsel: *S McConnell/S Teller*; Def Counsel: *J Meade*; **Pretrial Conference** held on 9/4/2007. Motions in limine discussed; Motion to Short Time, dkt #187, is DENIED; the remaining motions ruling reserved until further review and/or trial; voir dire/jury selection processes reviewed with parties; pretrial order and modifications discussed; Court notes expert witnesses are numerous - parties to specifically designate the witnesses they anticipate calling in their case in chief; length of trial discussed and parties anticipate approximately ten court days; Court to explore the availability of a settlement judge. (DK) (Entered: 09/05/2007) |
| 09/05/2007 | 206 | MINUTE ORDER: Pursuant to the oral ruling during the pretrial conference in this matter held on 9/4/07, Plaintiff's Motion to Shorten Time to Hear Plaintiff's Supplemental Motions in Limine is DENIED re 187 MOTION for Relief *from Deadline to file Supplemental Motions in Limine*, by direction of Judge Robert J. Bryan. (DK) (Entered: 09/05/2007) |
| 09/05/2007 | 207 | MINUTE ENTRY for proceedings held before Judge Ricardo S. Martinez - **Settlement Conference** held on 9/5/2007. (LW) (Entered: 09/06/2007) |
| 09/07/2007 | | Set/Reset Deadlines: Case has settled; Dismissal/Settlement papers due by 9/21/2007. (DK ) (Entered: 09/07/2007) |
| 09/21/2007 | | Set/Reset Deadlines: Dismissal/Settlement papers deadline extended to 10/5/2007 per request by counsel. (DK ) (Entered: 09/21/2007) |
| 10/16/2007 | | Set/Reset Deadlines: Dismissal/Settlement papers due by 10/19/2007. (DK ) (Entered: 10/16/2007) |
| 10/19/2007 | 208 | Proposed MOTION to Dismiss by Counter Claimants Robert Todd Erickson, Anne Erickson, Defendants SOMS Inc PS, Robert Todd Erickson, Anne Erickson. Noting Date 10/19/2007.(Meade, James) (Entered: 10/19/2007) |
| 11/06/2007 | 209 | STIPULATION AND ORDER OF DISMISSAL, granting 208 Motion to Dismiss. Signed by Judge Robert J. Bryan.(JL) (Entered: 11/06/2007) |

---

| **PACER Service Center** |
|---|

EXHIBIT 5



OGDEN
MURPHY
WALLACE
P.L.L.C.
ATTORNEYS AT
LAW

*Jaime D. Allen*
*206.442.1311*
*jallen@omwlaw.com*

March 31, 2010

**VIA E-MAIL AND U.S. MAIL**

Anthony Shapiro
Hagens Berman Sobol Shapiro
1918 Eighth Avenue, Suite 3300
Seattle, WA, 98101

RE:    *Erickson v. MicroAire*

Dear Tony:

Pursuant to Fed.R.Civ.P. 45(b)(1), our office is serving notice by enclosing subpoenas to Dr. Forshey.

Very truly yours,

OGDEN MURPHY WALLACE, P.L.L.C.

Jaime D. Allen

JDA/csh
Enclosures

cc:    Stephen Teller

Established 1902
A Member of the International Lawyers Network with independent member law firms worldwide

1601 Fifth Avenue, Suite 2100  •  Seattle, WA 98101-1686  •  206.447.7000  •  Fax: 206.447.0215  •  Web: www.omwlaw.com
{JDA779222.DOC;1\12439.000005\ }

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Washington

| | | |
|---|---|---|
| TODD AND ANNE ERICKSON, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:08-CV-05745-FDB |
| MICROAIRE SURGICAL INSTRUMENTS, LLC | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Jennifer Forshey, DMD, MD, c/o Stephen Teller, 1139 34th Avenue, Suite B, Seattle, WA 98122

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Ogden Murphy Wallace, PLLC 1601 5th Avenue, Suite 2100 Seattle, WA 98101 | Date and Time: 04/21/2010 9:00 am |
|---|---|

The deposition will be recorded by this method:   audiovisual, stenographic

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/31/2010

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| Signature of Clerk or Deputy Clerk | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Microaire Surgical Instruments, LLC _____ , who issues or requests this subpoena, are:
Jaime Drozd Allen, Ogden Murphy Wallace, PLLC, 1601 5th Avenue, Suite 2100, Seattle, WA 98101, jallen@omwlaw.com, (206) 447-7000.

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  3:08-CV-05745-FDB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____           _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| TODD AND ANNE ERICKSON, ) | |
| *Plaintiff* ) | Civil Action No.   3:08-CV-05745-FDB |
| v. ) | |
| MICROAIRE SURGICAL INSTRUMENTS, LLC ) | (If the action is pending in another district, state where: |
| *Defendant* ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jennifer Forshey, DMD, MD, c/o Stephen Teller, 1139 34th Avenue, Suite B, Seattle, WA 98122

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A attached hereto.

| Place:  Ogden Murphy Wallace, PLLC (ATTN: Jaime Allen) 1601 5th Avenue, Suite 2100 Seattle, WA 98101 | Date and Time: 04/14/2010 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/31/2010

CLERK OF COURT

                                                              OR

_____                                    _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Microaire Surgical Instruments, LLC _____, who issues or requests this subpoena, are:

Jaime Drozd Allen, Ogden Murphy Wallace, PLLC, 1601 5th Avenue, Suite 2100, Seattle, WA 98101, jallen@omwlaw.com, (206) 447-7000.

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:08-CV-05745-FDB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**B.     Documents to Produce**

1.      Please produce all witness statements obtained in or concerning the issues in *Forshey v. SOMS, Inc. et. al.* (W.D. Wash. Case No. C06-5335-RJB).  This request does not include any documents that are subject to the attorney-client privilege or work product doctrine.

2.      Please produce all deposition transcripts, along with accompanying exhibits, as well as videotapes of any depositions, concerning the lawsuit captioned *Forshey v. SOMS, Inc. et. al.* (W.D. Wash. Case No. C06-5335-RJB).

3.      Please produce any settlement agreements, or other contracts or agreements, between you and Todd Erickson, Anne Erickson, and/or Sound Oral & Maxillofacial Surgery.

4.      Please produce any employment contracts that you have with Todd and/or Anne Erickson and/or Sound Oral & Maxillofacial Surgery, P.S.